PARKER AND YOUNG MANUFACTURING COMPANY *vs.*
EXCHANGE FIRE INSURANCE COMPANY.

SAME *vs.* NORTH AMERICAN FIRE INSURANCE COMPANY.

SAME *vs.* LONDON AND LANCASHIRE INSURANCE COMPANY.

SAME *vs.* AMERICAN FIRE INSURANCE COMPANY.

SAME *vs.* MICHIGAN MUTUAL FIRE AND MARINE INSURANCE
COMPANY.

Suffolk.   March 12, 1896. — September 2, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Fire Insurance — Cancellation of Policy — Principal and Agent.*

A. procured through B., a broker, policies of insurance in several companies against loss by fire on his property. Soon after the policies had been issued to and received by A. and he had paid the premiums, the agents of the companies notified B. to return the policies for cancellation, as, under provisions contained in them, they had the right to do upon tendering back a ratable proportion of the premium. Thereupon B. wrote to A. to return the policies, saying, in substance, that he was unable to hold them at the rate at which they had been issued, and that the companies had ordered them to be returned for cancellation, but the correspondence between the agents and B. was not exhibited by him to A. A. accordingly returned the policies to B., who delivered them to the companies from which they had been received, and they were all duly cancelled several weeks before the property was destroyed by fire. *Held*, in actions by A. upon the policies, that A. had given B. special authority to cancel the policies.

The acts of an agent within the apparent scope of his authority, although in viola-

tion of undisclosed instructions, are binding upon his principal, unless there is something in the nature of the business or the circumstances of the case to indicate that the agent is acting under special instructions or limited powers.

FIVE ACTIONS OF CONTRACT, upon policies of insurance issued by the defendants respectively against loss by fire on the plaintiff's property in Lisbon, New Hampshire. The cases were referred to an auditor, who found that the policies, which were procured by the plaintiff through one Hill, a broker, who was secretary of the Prudential Fire Insurance Company of Boston, had been legally cancelled before the loss occurred. The actions were tried together in the Superior Court, before *Hopkins, J.*, who, at the request of the defendants, ruled that the actions could not be maintained, and directed the jury to return verdicts for the defendants; and, at the plaintiff's request, reported the cases for the determination of this court. If there was any evidence upon which a jury might have found for the plaintiff in any or all of the actions, a new trial was to be ordered in such actions; otherwise, judgment was to be entered on the verdicts. The facts material to the points decided appear in the opinion.

*H. P. Harriman & G. P. Wardner*, for the plaintiff.

*W. B. French*, for the first two defendants.

*J. H. Benton, Jr.*, for the other defendants.

MORTON, J. The defendants contend that Hill, as an officer of the Prudential Insurance Company, had the general charge of the plaintiff's insurance on its manufacturing property, and that, as such general agent, it was within the scope of his authority to cancel policies. If this is not so, they further contend that the plaintiff gave him specific authority to cancel the policies in question.

We doubt whether Hill was, as matter of law, the general agent of the plaintiff in respect to its insurance on its manufacturing property, and whether that was not a question for the jury. The general course of business seems to have been that the plaintiff informed Hill of the amount of insurance which it desired, and that he distributed it amongst such companies and in such amounts as he thought best. But in one case, at least, the plaintiff objected to the distribution, and it presumably was changed. As the policies were obtained, they were sent to the

486 PARKER & YOUNG MANUF. CO. v. FIRE INS. COS. [166

plaintiff, which paid the premiums in due course, and retained and disposed of the policies as it saw fit. No instance is given in which, after insurance had been effected, Hill substituted other insurance, or changed or cancelled policies, without the knowledge and direction of the plaintiff. In this case he did not attempt to cancel until authorized by the plaintiff.

It is not necessary, however, to decide this question, since we think that the evidence shows that the plaintiff had given him special authority to cancel the policies in suit.

It appears without contradiction from the correspondence that not long after the policies in the London and Lancashire, North American, and Exchange Companies had been issued to and received by the plaintiff, and it had paid the premiums, the agents of those companies notified Hill to return the policies for cancellation, as, under provisions contained in them, they had the right to do upon tendering back a ratable proportion of the premium. Thereupon Hill wrote to the plaintiff first to return the London and Lancashire policy, and later to return all of the policies which are now in suit, saying, in substance, that he was unable to hold them at the rate at which they had been issued, and that the companies had ordered them to be returned for cancellation. In accordance with the request thus made, the plaintiff returned the policies to Hill, who delivered them to the companies from which they had been received, and they were all duly cancelled, some a longer and some a shorter time before the fire occurred, but all from between three and four weeks to upwards of seven weeks before that event. The correspondence between the agents and Hill was not exhibited by the latter to the plaintiff, but it is plain, we think, that the policies were returned to Hill by the plaintiff with the expectation that they would be cancelled, and in order to enable him to deliver them up for that purpose. The plaintiff thus constituted him its agent to return the policies for cancellation, independently of the fact that he had procured the insurance or was an insurance broker. In view of Hill's relations to the plaintiff, we see no ground on which it justly can be held that the application of the insurance companies to him to return the policies for cancellation made him their agent. We do not understand that there is any general rule that a party applying to an insurance

broker in respect of any matter thereby under all circumstances makes him his agent *quoad* that matter.   The question whose agent the broker is, is one of evidence in each particular case, though, if all that appears is the fact of an application to him, very likely he would be regarded as the agent, so far as third parties are concerned, of the party applying to him.   Mechem, Agency, §§ 106, 931.

The plaintiff further contends that Hill had no authority to deliver up the policies for cancellation except upon condition of procuring other insurance to take the place of that which was surrendered.   It is expressly found, however, that the defendants had no notice of this limitation upon Hill's apparent authority, and it is well settled that the acts of an agent within the apparent scope of his authority, although in violation of undisclosed instructions, are binding upon his principal, " unless there is something in the nature of the business or the circumstances of the case to indicate that the agent is acting under special instructions or limited powers."   *Markey* v. *Mutual Benefit Ins. Co.* 103 Mass. 78, 92, 93.   *Harnden* v. *Milwaukee Ins. Co.* 164 Mass. 382, 386.   Moreover, we are inclined to agree with the auditor that the instructions given to Hill by the plaintiff " did not limit, and were not intended to limit, his authority to surrender the policies for cancellation, but only related to his duty and authority to reinsure the property as soon as the defendants' policies had been cancelled."

If the plaintiff has any remedy against Hill for the loss, if any, which it has sustained by being led to authorize the cancellation of the policies in the American and Michigan Companies through any mistake or misrepresentation of his concerning directions from those companies, the cancellations themselves cannot be affected by such mistake or misrepresentation.

In accordance with the report, the entry must be, judgment on the verdicts, and it is

*So ordered.*