### DAVID E. PORTER, admr., *vs.* THE MUTUAL LIFE INS. CO. OF NEW YORK.

October Term, 1897.

Present: ROSS, C. J., ROWELL, TYLER, MUNSON, START and THOMPSON, JJ.

*Insurance—Agent—Credit for Premiums—Completion of Contract—Rescission—Delivery of Policy.*

The issuance of a policy upon an application which recites that the premium has been paid to the agent, is proof that the agent had authority to receive the premium.

An insurance company is bound by the act of its agent in giving credit for premiums if it permits the practice.

It is not necessary to the completion of a contract of insurance that the policy should be actually delivered to the insured. The issuance of a policy in accordance with the terms agreed upon, and its transmission to the agent for unconditional delivery to the insured, is sufficient.

If the policy fails in some particular to conform to the terms agreed upon, and the applicant rejects it, but upon other and untenable grounds, the company, when sued upon the policy, cannot take advantage of the discrepancy to say that the contract was not completed.

It takes two to unmake as well as to make a contract.

The intestate applied for insurance upon his life, and gave his note to the agent for the first premium, conditioned to be void if the policy were not issued; and the application recited that the premium had been paid to the agent. The policy was issued by the company and sent to and retained by the agent, who, when the note matured, offered the intestate the policy and demanded payment of the note, and the intestate refused both. The intestate died during the period covered by the first premium. *Held,* that his administrator could recover.

After the death of the insured his brother obtained the policy from the agent by paying the note and fraudulently representing that the insured was alive and well. *Held* that this did not affect the plaintiff's right.

Assumpsit upon a policy of life insurance. Heard upon an agreed case at the June Term, 1897, Caledonia County, *Taft,* J., presiding. Judgment for the defendant. The plaintiff excepted.

The facts are sufficiently stated in the opinion except in relation to the procuring of other insurance and obtaining possession of the policy. Shortly after signing this application the intestate applied for insurance in another company, stating that he had no insurance. He did not then or ever afterwards intend to pay the note referred to or to take the policy in question. After his death, his brother went to Drew and obtained possession of the policy by falsely and fraudulently representing that the deceased was alive, by paying the note and promising to procure a health certificate.

*Farnham & Porter* and *Dunnett & Slack* tor the plaintiff.

If Magill was ever insured with the defendant he was insured at the time of his death. His refusal to accept the policy and pay the note did not rescind the contract, because the defendant did not assent. *McAllister* v. *Ins. Co.,* 101 Mass. 558.

Drew had authority to collect the premium. *Landon* v. *Proctor,* 39 Vt. 78. Having authority to collect, he had authority to accept the note in payment. May, Ins. § § 134, 345 and citations.

At any rate, the defendant gave credit by extending to Drew the time for remittance of the collected premiums. *White* v. *Ins. Co.,* 120 Mass. 330.

But here the premium was prepaid at the time of the making of the application. The note was payment. It was enforceable if the company issued the policy, and the company did issue it. It remained enforceable to the time of Magill's death, and after his death it was too late for the defendant to rescind. No delivery of the policy to Magill was necessary. *Hallock* v. *Ins. Co.*, 2 Dutch. 268; 3 Dutch. 645; *Newark M. Co.* v. *Ins. Co.*, 22 L. R. A. 768; May, Ins. §§ 43, 60; *Shattuck* v. *Ins. Co.*, 4 Cliff 598; *Smith* v. *Ins. Co.*, 10 Ins. L. J. 926; *Blanchard* v. *Waite*, 28 Me. 51 : 48 Am. Dec. 474; *Stock Ins. Co.* v. *Tuttle*, 40 N. J. L. 476; *Cromwell* v. *Ins. Co.*, 33 Am. Rep. 258; Bishop, Contr. § 1373 note and citations.

*Bates, May & Simonds* and *Harry Blodgett* for the defendant.

There was no completed contract. Clark, Contracts, 29 and 30; *Holmes* v. *Crossett*, 33 Vt. 116; *Thayer* v. *Ins. Co.*, 10 Pick. 325; *Ins. Co.* v. *Grant*, 4 L. R. Exch. Div. 221; *Maclay* v. *Harvey*, 90 Ill. 525: 32 Am. Rep. 35 and note; 1 Pars. Contr. 475; *Johnston* v. *Fessler*, 7 Watts 48; *Ball* v. *Newton*, 7 Cush. 599; *Jenness* v. *Iron Co.*, 53 Me. 20; 1 Benj. Sales 54; *Felthouse* v. *Bindley*, 11 C. B. (N. S.) 869. Magill had a right to reject the policy and did. *Giddings* v. *Ins. Co.*, 102 U. S. 108.

The premium was never paid. *Ins. Co.* v. *Ewing*, 99 U. S.; *Whiting*, v. *Ins. Co.*, 129 Mass. 240; *Giddings* v. *Ins. Co.*, 102 U. S. 108; *Ins. Co.* v. *Young*, 23 Wall. 106; *Griffith* v. *Ins. Co.*, 40 Am. St. 96.

*Edward Lyman Short* and *Frederick L. Allen* also filed a brief for the defendant.

MUNSON, J. The first question to be considered is whether there was a completed contract of insurance between the applicant and the company. By the terms of the application the premiums were to be paid semi-annually, and the contract was not to take effect until the first premium was

paid. The application recites the payment to the soliciting agent of an amount equal to one-half the annual premium, and acknowledges the delivery to the applicant of a binding receipt therefor, signed by the secretary of the company, and making the insurance in force from the date of the application, provided the application should be approved and the policy be signed by the secretary. The premium was not paid otherwise than by the delivery of a note, which stated that it was given for the premium and was to be void if the company declined to issue the policy. This note was payable to the order of the soliciting agent, who delivered it to the local agent for whom he was working, by whom it was afterwards retained. This agent sometimes accepted notes for first premiums, and at the end of each month he remitted in cash to the general agent for all first premiums received. The company accepted this application, and issued a policy to the applicant bearing date September 17, 1895, and forwarded the same through the customary channel to the local agent, who retained it until November 8, without notifying the applicant that it had been issued, and without being applied to by the applicant in regard to it. On that day the agent saw the applicant and asked him to pay the note and take the policy, which he declined to do; and both note and policy remained in the agent's hands until the applicant's death.

The issuance of the policy upon an application which recited that the premium had been paid to the agent is sufficient proof that the agent had authority to receive the premium. And it is said in May on Insurance, § § 134 and 360, that an agent authorized to receive payment of premiums has a discretion as to the mode of payment, and may accept a note instead of the money, and that if he arrange with the applicant to become responsible to the company for the premium and to hold the applicant as his personal debtor therefor, this will be a waiver of the provision that the policy shall not be valid until the

premium is paid. It is not necessary to inquire whether these propositions are fully sustained by the cases cited in their support, for upon the findings in this case it must be held that the company received the first premium in the next monthly remittance of the agent, and this being the case the company cannot complain that the payment was not made by the insured. Ostrander on Fire Ins. 37. But if the findings were to be construed to limit the agent's remittances to the cash receipts, this would not change the result. If he did not remit for the notes, the remittances would not correspond with the policies issued, and this would show that credits were given; and the authorities are clear that when such a practice is known the company will be liable.

It was not necessary to the completion of the contract that the policy should be actually delivered to the insured. The issuance of a policy in accordance with the terms agreed upon, and its transmission to the agent for unconditional delivery to the insured, is tantamount to a delivery. The applicant was entitled to the possession and control of the policy from the moment it was received by the agent, and the custody of the latter must be treated as that of the insured. May Ins. § 60; Ostrander Fire Ins. § § 45, 71. If the policy is in accordance with the terms proposed, it is clear that upon tendering the policy to the applicant the agent could have enforced collection of the note when due, and that if the applicant had died after the policy was transmitted to the agent and before the interview between them, the company would have been liable. There had been such a payment of the premium and such a delivery of the policy as completed the contract.

The policy conformed to the application in all respects, except that the application called for insurance from its date, while the policy was dated eight days later. This variance worked no injury to the applicant in the circumstances, and his subsequent rejection of the policy was based entirely upon other grounds. In the absence of any complaint by the

insured, we see no ground upon which the company can take advantage of the discrepancy.

This completed contract between the applicant and the company could not be rescinded without the consent of both parties. The case shows no assent on the part of the agent to the attempted rescission of the insured. He continued to hold the note and demand its payment. It is obvious that he could have enforced its collection as against every objection that was urged. The contract remained unchanged until the moment of the insured's death, and the company could not afterwards do what it had refused to permit the insured to do.

The intestate's action in the procurement of other insurance, and the fraudulent conduct of his brother in obtaining possession of this policy, are not controlling.

> *Judgment reversed and judgment for plaintiff for one thousand dollars with interest from March 13, 1896.*