WALTER O. FAULKNER & others *vs.* MANCHESTER FIRE
ASSURANCE COMPANY.

Essex.   March 4, 1898. — May 23, 1898.

Present: ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Fire Insurance — Waiver — Cancellation of Policy — Effect of Non-disclosure
to adverse Party of Principal's Instruction to Agent.*

A mistake in a proof of loss in regard to the number of the building will not affect
the right of the assured to recover if the description of the building corresponded
in other respects with that contained in the policy, and there is nothing to show
that the insurer was misled or prejudiced by the error.

Where at the trial of an action upon a policy of insurance against loss by fire it is
found that the policy had been duly cancelled before the fire occurred, it is
unnecessary to decide whether there is evidence tending to show that the
defendant waived the provision in the policy in regard to arbitration in case the
parties were unable to agree as to the amount of the loss.

At the trial of an action upon a policy against loss by fire it appeared that the
plaintiff applied for insurance to a broker, who had procured other insurance for
him, and who in turn applied to an agent of the company, who issued and
delivered a policy to the plaintiff; that subsequently, the defendant having
requested its agent to cancel the policy, he went to the broker's office, and, the
broker being absent, asked his clerk to get the policy and bring it to him for
cancellation, which the clerk did before the fire occurred; that the plaintiff
authorized the broker's clerk to deliver up the policy for cancellation, but not
until after he should be insured in some other good company to the same
amount, but such instructions were not disclosed to the defendant's agent.
*Held*, that the policy was duly cancelled before the fire occurred, and that, the
broker's clerk being the agent of the plaintiff, the instructions to him, which
were not disclosed to the defendant's agent, could not affect the validity of the
cancellation.

CONTRACT, upon a policy of insurance against loss by fire on
premises situated in Lynn.

At the trial in the Superior Court, before *Dunbar*, J., there
was evidence tending to show that in 1895 the plaintiffs applied
for insurance upon their property, described in the policy as a
"frame building occupied for the manufacture of potato chips,
situate No. 6 Washington Street, Lynn, Mass.," to one Breed, an
insurance broker, who had procured other insurance for them,
and who made application therefor to one Madden, an authorized
agent of the defendant in Lynn; that Madden issued a policy

of the defendant company, by which the property of the plaintiffs was insured for one year from July 24, 1895, and delivered it to Breed, who delivered it to the plaintiffs; that subsequently, but previous to the fire, which occurred on August 16, 1895, the defendant requested Madden to cancel the policy, and return it to the main office of the company; that he went to Breed's office, and, Breed being absent, asked his clerk, Miss Wentworth, to procure the policy from the plaintiffs and bring it to him for cancellation; that Miss Wentworth procured the policy from the plaintiffs, and, before the fire, left it at Madden's office, saying to the clerk to whom it was handed, "There is the policy Mr. Madden wants"; that the policy was cancelled on the day it was returned to Madden; that the plaintiffs authorized her to deliver up the policy for cancellation when they were covered in some other good company for the same amount and not before, but these instructions to her were not disclosed to Madden. There was further evidence tending to show that, seasonably after the fire, the plaintiffs rendered to the defendant proofs of loss, in which the building damaged by fire was described as a "frame building $2\frac{1}{2}$ stories high, occupied as a chip factory, situate No. 8 Washington St., Lynn, Mass."; that the parties having failed to agree as to the amount of the loss, they entered into an agreement of reference on October 22, 1895, according to the terms of the policy; that one referee was chosen by each of them; that these two referees accepted the appointment, appointed a third referee, and, the third referee having failed to accept his appointment or to act with the others, they proceeded to make an award; that the defendant's agent, in forwarding the award of the referees to the plaintiffs, stated that "it did not occur to me at the time of signing the agreement for submission that your policy had been cancelled, and that therefore there was no occasion for the Manchester Fire Assurance Company to enter into any reference for the determination of the amount of loss to your property. Aside from that, and if your policy had not been cancelled, the paper sent herewith is — as the statute and your policy require — an agreement for submission to *three* people. If there had been outstanding a valid policy of the Manchester Assurance Company at the date of your loss, the amount of loss — unless

it had been agreed upon by the parties — could *only* have been ascertained by reference to *three* referees, *all* of whom must take part in ascertaining the amount of the loss. It appears from this paper that the person selected by the other two to act as a third referee never accepted his appointment, he was never sworn, and did not act with the other two. Under these circumstances, any award of the other two is, of course, invalid. The company would therefore refuse to be bound by the same, even if your policy had not been cancelled before the loss."

The judge directed the jury to return a verdict for the defendant, and reported the case for the determination of this court. If the direction was right, judgment was to be entered on the verdict; otherwise, judgment was to be entered for the plaintiffs.

*W. H. Niles*, for the plaintiffs.

*J. D. Bryant*, for the defendant.

MORTON, J. We think that the plaintiffs' right to recover was not affected by the mistake in the proof of loss in regard to the number of the building. The description of the building corresponded in other respects with that contained in the policy, and there is nothing to show that the defendant was misled or prejudiced by the error. It received the proof without objecting then, or during the subsequent negotiations, to the mistake in the number, and the jury might have found that it had waived any objection to the proof which it might have had on that ground. *Blake* v. *Exchange Ins. Co.* 12 Gray, 265. *Graves* v. *Washington Ins. Co.* 12 Allen, 391. *Underhill* v. *Agawam Ins. Co.* 6 Cush. 440.

We do not find it necessary to consider whether there was evidence tending to show that the defendant waived the provision in the policy in regard to arbitration in case the parties were unable to agree as to the amount of loss, since we are of opinion that the policy was duly cancelled before the fire occurred.

It is admitted that Madden was the agent of the defendant, and that as such agent he had authority to issue, deliver, and cancel the policy in suit; but the plaintiffs contend that, in procuring the policy and delivering it to him for cancellation, Miss Wentworth acted as his agent, and not as their agent. It was

uncontroverted that the plaintiffs applied to one Breed to secure insurance on the building, and that he in turn applied to Madden, who issued the policy. After the policy was issued and delivered, the defendant company requested Madden to cancel it and promptly return it to the main office. Thereupon Madden went to Breed's office and told Miss Wentworth, who was the clerk in charge, that he was instructed to cancel the policy, and asked her to get it and bring it to him for cancellation, which she did. Breed had procured other insurance for the plaintiffs. It is evident, we think, that Miss Wentworth must be regarded in Breed's absence as representing him, and that in applying at Breed's office for the policy Madden treated Breed as the party who had represented and acted for the plaintiffs in procuring the insurance, and as the proper person through whom to make application for its return for cancellation. It would only be by a fiction of law, therefore, that Breed or his clerk could be regarded as Madden's agent, or as representing anybody except the plaintiffs in delivering up the policy for cancellation. And we see nothing that requires such a fiction to be imported into the case, or which will justify any other conclusion than that Miss Wentworth was the agent of the plaintiffs. That being so, the plaintiffs' instructions to her, which were not disclosed to Madden, could not affect the validity of the cancellation. *Parker & Young Manuf. Co.* v. *Exchange Ins. Co.* 166 Mass. 484.

*Judgment on the verdict.*