[Civil No. 2690. Filed February 28, 1928.]

[264 Pac. 474.]

KANSAS CITY LIFE INSURANCE COMPANY, a Corporation, Appellant, v. JENNIE WHITE and E. J. WHITE, Her Husband, Appellees.

304

Messrs. Armstrong, Lewis & Kramer, for Appellant.

Messrs. Struckmeyer, Jennings & Strouss, for Appellees.

ROSS, C. J.—This suit was brought by Jennie White, the mother of James Cornelius White, as the beneficiary under a policy of life insurance of $2,500 issued by the Kansas City Life Insurance Company, J. E. White, the husband and father, formally joining as a plaintiff. The plaintiff obtained judgment for the full face of the policy. The defendant company appeals.

It is the legal effect to be given the facts of the case that we are asked to determine. The facts are not in dispute, and are as follows: July 26th, 1926, James Cornelius White, at Prescott, Arizona, made a written application for life policy for $2,500, on the form used by such company, and at the same time executed and delivered to Givens Brothers, general agents of defendant in Arizona, his promissory note for $53.75, payable to their order, for the first year's premium, to be paid in installments, as follows: August 14th, $13.75, September 15th, $20, and October 15th, $20, with interest at ten per cent per annum. The application was thereupon forwarded to defendant's home office in Kansas City. Upon its receipt, on the third day of August, the company charged on its books Givens Brothers with the first year's premium, less their commissions, and transmitted them a debit slip, in that respect following the usual custom. Givens Brothers took the note, agreeing with White to send cash to the company for the first year's premium, and it is stipulated that they were "the sole owners and holders of said note." No part of the premium, except by note, was ever paid by the insured to Givens Brothers.

On August 3d the defendant approved the application and issued and mailed the policy to Givens Brothers, at Phoenix, Arizona, who, in turn, upon its receipt remailed it to the soliciting local agent, one H. A. Stanley, at Prescott, for delivery. The latter did not deliver policy to the insured because he could not be found at his usual address in Prescott, and it was accordingly returned to the Phoenix office.

In the meantime the defendant had received information that insured was participating in aviation, and on August 9th wired Givens Brothers to return policy to it. This wire was followed by a letter dated August 10th requesting Givens Brothers to secure

insured's waiver of any claim under the policy if killed in aviation. Givens Brothers wrote the insured, directing the letter to his address as given in Prescott, as also did defendant, asking for attention to the request of waiver. The letters were not returned, and, if received, no attention was paid to them. It was a rule of the company not to insure persons engaged in aviation, especially those flying in airplanes, but such rule was not stated in either the application or the policy. The policy was never turned over to the insured, but some time in September was marked by the defendant "Canceled." On October 8th, 1926, the insured was killed in a falling airplane, in Maricopa county.

In the application are these provisions:

*"If this application is accompanied by the first premium in cash and shall be approved at the home office of the company, and a policy on the plan and for the amount applied for shall be issued while the applicant is alive and in good health,* then the insurance shall be effective, subject to the terms and conditions of the policy, from twelve o'clock noon of the day this application shall be approved by the medical department at the home office of the company.

*"If this application is not accompanied by the first premium in cash, it is agreed that the company assumes no liability whatever until a policy of insurance is actually delivered to me during my lifetime and while I am in good health, and any money, check, note, obligation, or other thing of value, given to the company or its agent, on account of the first premium on the policy* applied for shall be held by the company merely as a deposit and not as payment until such time as the policy of insurance is issued and delivered to me during my lifetime and while I am in good health, after which the same shall be applied on such first premium charge; otherwise said deposit shall be returned to me or my heirs, executors or administrators." (Italics ours.)

The policy issued was in conformity with the application, and the only question is whether the con-

tract was a completed one when the application was approved and the policy issued by the company and mailed to its local agents, Givens Brothers, for delivery to the insured. If what was done to care for the first year's premium constituted in law a cash payment, this question should be answered in the affirmative. We think the cases are uniform, or nearly so, that the payment is in cash, where the local agent accepts the note of the insured as his personal property for the first payment and agrees with the insured to advance to the company such premium. In such transaction the agent acts in his personal capacity and not as a representative of the company. The latter is not interested in the note, for the reason that it has been paid the premium. The insured's obligation is to the person who advanced the premium and took the note as evidence thereof. The company in this case seemed to be satisfied with the method pursued in making the first payment, since when the application was received at the home office it approved not only the application but such method of payment by issuing "a policy on the plan and for the amount applied for" and immediately sent the policy forward for delivery to the insured, without any conditions attached thereto. What was done in this case was the usual method; it was not an isolated case but according to the usual custom.

Under a state of facts such as is disclosed in this case, the general rule is stated in 32 C. J. 1134, § 239, as follows:

"An actual payment of the premium by an agent of the company to it is as effectual as one made by insured himself, unless it is made without the request, direction, or ratification of insured; but of course the rule is not applicable where the agent does not pay the premium. Where the agent of the company, upon his individual responsibility, extends credit for the premium to insured, as by accepting the note of in-

sured payable to the agent individually, and pays the account to or is charged with it by the company, such payment inures to the benefit of insured and consummates the contract; and the fact that a note given by insured to the agent individually for the amount advanced is not paid when due does not invalidate the policy.''

A great number of cases are cited by the author in support of the above proposition, some of which are the following: *Union Life Ins. Co.* v. *Parker,* 66 Neb. 395, 103 Am. St. Rep. 714, 62 L. R. A. 390, 92 N. W. 604; *Porter* v. *Mutual Life Ins. Co.,* 70 Vt. 504, 41 Atl. 970; *Kimbro* v. *New York Life Ins. Co.,* 134 Iowa 84, 12 L. R. A. (N. S.) 421, 108 N. W. 1025; *Reppond* v. *National Life Ins. Co.,* 100 Tex. 519, 15 Ann. Cas. 618, 11 L. R. A. (N. S.) 981, 101 S. W. 786; *Unterharnscheidt* v. *Missouri State Life Ins. Co.,* 160 Iowa 223, 45 L. R. A. (N. S.) 743, 138 N. W. 459; *Griffith* v. *New York Life Ins. Co.,* 101 Cal. 627, 40 Am. St. Rep. 96, 36 Pac. 113; *Rosenborg* v. *Johnson,* 45 Colo. 53, 99 Pac. 315; *Reliance Life Ins. Co.* v. *Thayer,* 84 Okl. 238, 203 Pac. 190; *Jacobs* v. *Omaha Life Assn.,* 146 Mo. 523, 48 S. W. 462.

The defendant, besides contending that the first premium was not paid in cash, makes the point that the policy was never ''actually delivered'' to the insured and therefore was not a completed contract. But, as we read the clause requiring ''actual delivery,'' it applies only when such premium is paid by insufficient money or by ''check, note, obligation, or other thing of value given to the company, or its agent, on account of the first premium of the policy.'' While the note for first premium here was given to Givens Brothers it was given to them in their personal and not representative capacity. It was their sole property.

As is said in *Union Life Insurance Co.* v. *Parker, supra:*

"It (the note) was a mere personal indebtedness on the part of the insured to the agent, which was settled by the insured's note. Under the agreed statement of facts, the trial court in this case seems to us to have been entirely warranted in holding that this note was a personal transaction between Powell (agent) and the insured. . . . "

Speaking of a similar situation in *Porter* v. *Mutual Life Insurance Co., supra,* the court quotes from May on Insurance, §§ 134 and 360, as follows:

" . . . An agent authorized to receive payment of premiums has a discretion as to the mode of payment, and may accept a note instead of the money, and that if he arrange with the applicant to become responsible to the company for the premium and to hold the applicant as his personal debtor therefor, this will be a waiver of the provision that the policy shall not be valid until the premium is paid."

The law seems to be well settled that it is sufficient delivery of the policy when the application is approved and the policy issued in accordance with the plan and for the amount of the application and mailed by the insurance company to its agent for delivery to the insured. The rule is stated in *Unterharnscheidt* v. *Missouri State Life Insurance Co., supra,* as follows:

"It is quite obvious that this may or may not be true according to the circumstances under which the policy is placed in the agent's hands. If the premium is paid when the application is presented, and such application is approved and policy executed as of that date, and nothing remains but to deliver the paper to the insured, it may well be held that the sending of it to the agent to be by him given over to such insured person constitutes a sufficient delivery in law. To say the least, the neglect or omission of the agent under such circumstances to perform the manual act of placing the policy in the hands of the insured will not serve to suspend or postpone the obligation of the company upon its contract. In

other words, delivery in law is not necessarily manual delivery.''

The fact that the insured paid no attention to the request of the defendant to modify the policy, after it was issued, by a stipulation to waive its liability in the event he should come to his death while engaged in aviation, cannot in any way affect the validity of the policy, if it was valid without such clause at the time of its issuance and delivery. He had a right to stand upon his contract of insurance as it was written, and was within his rights in refusing to permit the alteration or change. The policy could be canceled by the defendant only upon the grounds therein stipulated, and it contained no clause providing for its cancellation in case the insured should engage in aviation.

We are satisfied that the judgment should have gone for the plaintiff, as it did, and the same is hereby affirmed.

LOCKWOOD and McALISTER, JJ., concur.