N. PELAGGI & CO. *v.* ORIENT INSURANCE CO.

January Term, 1930.

Present: POWERS, C. J., SLACK, MOULTON, and THOMPSON, JJ., and SHERMAN, Supr. J.

Opinion filed February 5, 1930.

386

*Chas. H. Darling* and *Fred E. Gleason* for the defendant.

388

*Gelsi Monti* and *Erwin M. Harvey* for the plaintiff.

POWERS, C. J.   McAllister & Kent, of Barre, were general agents for several fire insurance companies, including those here involved.   A policy written by them in the Star Insurance Company covering the plaintiff's granite shed in Northfield was to expire on July 14, 1926.   Prior to that date, the company instructed the agents not to renew it.   Thereupon, and at some time prior to July 10, 1926, they wrote and delivered to the plaintiff a policy in the New Hampshire Fire Insurance Company which bore date and was to take effect at noon on July 14, 1926.   This policy was to take the place of the Star policy when it expired.   It contained a provision that it might be cancelled by the insurer by giving the insured a five-days'

written notice thereof. When a report of the issuance of this policy reached the home office of the New Hampshire company, that office, under date of July 10, 1926, requested its agents to cancel the same, immediately. Upon receipt of this request, McAllister & Kent called the plaintiff's office at Northfield by telephone and informed Miss Davis, who was in charge of the office and intrusted with the duty of looking after the plaintiff's insurance, that the New Hampshire policy was cancelled, and that they would rewrite it in another company; and it was then arranged that Miss Davis was to hold that policy until a representative of the agency could call at the Northfield office, when the new policy would be exchanged for it. The exact date of this telephone conversation is not fixed. There is evidence in the record that it was prior to July 14, the day on which the New Hampshire policy was to attach; but as no claim is made by the plaintiff that that policy never took effect, we assume that it did.

Without further action regarding the New Hampshire policy, but treating it as legally cancelled, McAllister & Kent, on July 14, issued a policy in the defendant company to take its place. The property covered by these policies burned on the early morning of July 18, before the exchange of policies had been made and while the New Hampshire policy was in the plaintiff's office at Northfield and the defendant's policy was in the office of McAllister & Kent at Barre. After the fire the agents went to Northfield with the Orient policy and turned it over to the plaintiff. They took in return a lost policy receipt in effect releasing the New Hampshire company from liability, the policy in that company having burned in the fire.

The ultimate question here is which of these policies, the New Hampshire or the Orient, was in force at the time of the fire? It is expressly admitted that the defendant is not liable unless the New Hampshire policy was legally cancelled before the fire. The five-day clause above referred to, during which time the fire occurred, was inserted in the policy to give the insured time to secure other insurance on the property before it was left uncovered; it was for the benefit of the insured, and so it could be waived, either by the insured or its agent. *Phoenix Ins. Co.* v. *State,* 76 Ark. 180, 88 S. W. 917, 6 Ann. Cas. 440; *Federal Ins. Co.* v. *Sydeman,* 82 N. H. 482, 136 Atl.

136; *Hollywood L. & C. Co.* v. *Dubuque F. & M. Ins. Co.,* 80 W. Va. 604, 92 S. E. 858.

The undisputed evidence tended to show that some years before this fire the plaintiff arranged with McAllister & Kent to place and keep in effect fire insurance on this Northfield plant to the amount of $60,000; that by this arrangement the agents were to select the companies and apportion the amount between them; and the jury would be justified in finding that at different times they were obliged to change companies after a policy had been written, anl substituted one policy for another without notice to or consulting with the plaintiff further than to request the return of the policy to be replaced.

The authority conferred by this arrangement and its legal effect are vital factors in the case. In considering and deciding these questions, it must be borne in mind that McAllister & Kent were to do more for the plaintiff than to place the insurance; they were to keep it in force.

The defendant says it cannot be held, because (1) its policy was not delivered until after the fire; and (2) that the New Hampshire policy was not lawfully cancelled for lack of notice to and waiver of the five-day clause by the insured.

In support of the first of these propositions, the defendant points to the fact that its policy never left the desk in McAllister & Kent's office. That a fire insurance policy must be delivered before it becomes effective may be assumed. Though we find no occasion to consider the question of delivery apart from that of cancellation, we may say in passing that it does not take much to establish a delivery of an insurance policy. Manual delivery is not indispensable. It is a question of intention, largely. If a policy is written under an agreement therefor, and is complete and ready for delivery, so that nothing remains to be done but pass it over to the insured, though it remains in the hands of the insurer's agent, a constructive delivery results, which satisfies the rule. In such a case, the insurance agent is deemed to hold the policy for the insured. *Porter* v. *Mutual Life Ins. Co.,* 70 Vt. 504, 508, 41 Atl. 970; *Stephenson* v. *Allison,* 165 Ala. 238, 51 So. 622, 138 A. S. R. 26, and interesting and instructive note on page 29.

The most important question in the case is: Was the New Hampshire policy cancelled before the fire? In the first aspect

of this question, the answer depends upon what authority was vested in McAllister & Kent by the plaintiff.

It is not seriously denied that a dual agency may exist where there is no conflict of interests between the masters; but it is vigorously insisted by the defendant that here are such incompatible and conflicting interests between the plaintiff and defendant that the attempt to make McAllister & Kent the agents of the insured in the matter of cancelling the New Hampshire policy and waiving the five-day clause therein was ineffective on grounds of public policy and that the defendant is not bound by it since it knew nothing of it.

■ That the cases relied upon by the defendant justify its position cannot be denied. But by the weight of authority and the better reasoning, we think, the rule is established that where an insurance agent, representing several companies, is under an agreement with a property owner to keep a risk covered to a certain amount, without specification of companies or amounts for each by the latter, the former has authority to transfer that risk or a part of it from one company to another as occasion may reasonably require, without notice to or consent by the insured. The owner, by constituting him his agent to keep the property insured, thereby empowers him to select the companies to carry the risk, and clothes him with authority to cancel one policy and substitute another therefor.

*Phoenix Ins. Co.* v. *State,* 76 Ark. 180, 88 S. W. 917, 918, 6 Ann. Cas. 440, 441, is a much cited case on this subject. The facts in that case were much like those in this. A lumber company owned a mill and stock of lumber. On April 10, 1902, it applied to an insurance agent for a policy on its lumber. A policy in the Greenwich Insurance Company was issued and mailed to the insured. On April 21 the agent received instructions from that company to cancel the policy or secure a higher rate. He chose to cancel; and on the same day he wrote the insured that he was cancelling that policy and rewriting it in the Phoenix, another company. He wrote such a policy on April 23, and mailed it to the insured. That night the lumber burned. The Greenwich policy contained the five-day clause. It was shown that a previous agreement existed between the insured and the agent that the latter should keep the lumber insured, and no particular companies were mentioned. It was considered that the insured thereby constituted

the agent its agent to select the companies, and that as such agent he could cancel the Greenwich policy and substitute the Phoenix policy therefor, without notice to the insured or regard to the five-day clause. The court said: "Banks, though the agent of the insurance companies could be and was made the agent of the insured for those purposes." The Phoenix and not the Greenwich was held liable.

*Johnson* v. *North British & M. Ins. Co.,* 66 Ohio St., 6, 63 N. E. 610, was a case wherein the insured merely arranged with the agent to place the insurance, which was done. Afterwards a company ordered its policy cancelled, and the agent rewrote it in another company. The first policy contained the five-day clause, and the agent's attempt to take it up did not succeed until after the fire which occurred within the five-day period. It was held that no authority on the part of the agent to waive the five-day clause was shown. But after indorsing the doctrine that the insurance agent could act as agent for the insured so long as this involved only consistent duties, the court said: "Indeed, it has been so often held that an insurance agency representing several companies, with authority to act on applications and issue policies, as well as to cancel the same in proper cases, may also act as the agent of the insured in waiving notice of cancellation, and in accomplishing the delivery of a new policy when substituted for the one cancelled, that the proposition may be regarded as settled law."

*Waterloo Lumber Co.* v. *Des Moines Ins. Co.,* 158 Iowa, 563, 138 N. W. 504, 505, 51 L. R. A. (N. S.) 539, is another case wherein the court held that no authority to waive the five-day clause was shown, but the court said: "The insured could, of course, authorize the agents to act for him in receiving notice of cancellation and in procuring other insurance in case his policy was thereafter cancelled, but the giving of such authority in this case was nowhere shown, nor is it to be fairly implied from the record."

In *Dibble* v. *Northern Assurance Company,* 70 Mich. 1, 37 N. W. 704, 14 A. S. R. 470, the plaintiff had for several years an arrangement with a fire insurance agent to keep his property insured in such companies as the agent might select, and to renew the policies whenever necessary for that purpose. The defendant, whose policy was issued to replace one cancelled, defended on the ground that its policy was never delivered, and

on the further ground that the original policy was not legally cancelled. So far as the delivery was shown, it consisted in the agent placing the policy in his safe for the insured. So far as the cancellation was shown, it consisted of notice to the agent, but not to the insured as the policy required. Both points were decided against the defendant, and a recovery by the plaintiff was sustained.

*Warren* v. *Franklin Fire Ins. Co.*, 161 Iowa, 440, 143 N. W. 554, 555, L. R. A. 1918E, 477, is very much like the case in hand, except that there the authority of the agent to rewrite in case of cancellation was expressly given by the insured. A policy in one company was ordered cancelled and it was rewritten in the defendant. The question was as to which company should stand the loss which came within the time covered by the five-day clause contained in the first policy. The court held that the duties conferred upon the agent were not inconsistent with those owed to his companies, and said: "Not only were his employments not inconsistent with the performance of his duty toward each, but they were in harmony and well adapted to the accomplishment of the design of each, for no act of his essential therefor exacted the concurrence of both parties."

*Sterling Fire Ins. Co.* v. *Comision Reguladora*, 195 Ind. 29, 143 N. E. 2, 5, is a strong case for the plaintiff. There, not only was the authority of an insurance agent to accept cancellations for the insured involved, but such agent's power to authorize another agent, to whom he had applied for a part of the insurance, to do so, was also involved. It was held upon full consideration that the first agent could have such authority and could pass it on to the second agent.

*Federal Insurance Co.* v. *Sydeman*, 82 N. H. 482, 136 Atl. 136, is another strong case for the plaintiff. Indeed, the defendant says it is the strongest case for the plaintiff that can be found. However that may be, the court approved the doctrine that the insured may clothe the insurance agent with authority to waive the time clause (it was a ten-day clause in that case), and that he does so when he arranges with him to keep the property insured.

*Orkin* v. *Standard Fire Ins. Co.*, 99 N. J. Law, 114, 122 Atl. 823, is a case wherein an insurance broker was authorized to procure insurance and keep insurance on certain property.

He obtained a policy in the London Assurance Corporation, which was later ordered cancelled. The agent of the insurer notified the broker, who consented to the cancellation and the substitution of a policy in the defendant company. The insured knew nothing of this until after a fire which destroyed the property covered by the policy. The defense was predicated upon the claims that there had been no cancellation of the first policy, and no delivery of the last. Both grounds were held to be untenable. The court put its decision on the ground that the broker, being charged with the duty of keeping the property covered, was clothed with authority, as agent of the insured, to accept notice of cancellation and to accept the substituted policy.

*Northern Assurance Co.* v. *Newman Lumber Co.*, 105 Miss. 688, 63 So. 209, 211, is another case where a broker was commissioned by the assured to obtain insurance and keep the property fully covered at all times. It was held that the brokers were authorized to accept and agree to cancellations. See *Standard Leather Co.* v. *Ins. Co. of North America*, 224 Pa. 178, 73 Atl. 216, 219.

The defendant says that broker cases are not in point, since the broker is the admitted agent of the insured, and does not in any respect represent the insurer. But when the scope of the agency is the question, such cases are to be considered as in point.

By the foregoing authorities, the following propositions, which we now approve, are established:

1. When an insurance agent is employed to write or procure certain insurance, merely, his authority for the insured is exhausted when he has done so, and he has no authority to consent to its cancellation, to waive the five-day rule, or to accept a substitute policy.

2. But where such agent is authorized by the assured, not only to place the insurance, but also to keep the property covered, he has implied authority to do whatever is reasonably necessary to accomplish that object, and he may waive the five-day clause, accept cancellation and substitution—all without notice to or consent by the insured.

Other cases in full accord with the foregoing, are: *Ætna Ins. Co.* v. *Renno*, 96 Miss. 172, 50 So. 563; *Insurance Underwriters' Agency* v. *Pride*, 173 Ark. 1016, 294 S. W. 19; *Hamm*

*Realty Co.* v. *New Hampshire Co.,* 80 Minn. 139, 83 N. W. 41; *Hollywood Lumber & C. Co.* v. *Dubuque F. & M. Ins. Co.,* 80 W. Va. 604, 92 S. E. 858; *Allemania Fire Ins. Co.* v. *Zweng,* 127 Ark. 141, 191 S. W. 903; *Dalton* v. *Norwich Union Fire Ins. Soc.* (Tex. Comm. App.), 213 S. W. 230; *Schauer* v. *Queen Ins. Co.,* 88 Wis. 561, 60 N. W. 994; *Wilson* v. *German-American Ins. Co.,* 90 Kan. 355, 133 Pac. 715.

■ ■ No particular form of words is required to effect such an arrangement as is herein referred to. What is said between the parties, construed in the light of the attendant circumstances, is to be considered. Ordinarily, the question of authority is one of fact to be determined by the jury. *Todd* v. *German-American Ins. Co.,* 2 Ga. App. 789, 59 S. E. 94; *Sterling Fire Ins. Co.* v. *Comision Reguladora,* 195 Ind. 29, 143 N. E. 2, 5. But where, as here, the facts are not in dispute, the question is one of law. *Federal Ins. Co.* v. *Sydeman,* 82 N. H. 482, 136 Atl. 136, 138; *Gulick* v. *Grover,* 33 N. J. Law, 463, 97 A. D. 728.

■ We hold, then, that the New Hampshire policy was not in force at the time of the fire, and that the Orient policy was. We reach this conclusion without considering the question of ratification of the acts of McAllister & Kent by the insured, of which we say nothing more than that there was at least evidence tending to show that Miss Davis had authority to and actually did ratify what they had done. *Faulkner* v. *Manchester Fire Assur. Co.,* 171 Mass. 349, 50 N. E. 529.

■ The defendant makes some claim that McAllister & Kent withheld material facts concerning this matter so that its policy is voidable at its election. Of this, it is enough to say that that question is one for the defendant and its agent to settle between themselves. The plaintiff had nothing to do with it, and the validity of the policy here is not affected by it. *Massachusetts Life Ins. Co.* v. *Eshelman,* 30 Oh. St. 647.

■ The court charged the jury that the burden of proof was on the defendant to show that the duties imposed upon McAllister & Kent by the insured and insurer were inconsistent and incompatible. To this the defendant excepted. Since we hold that these duties were not incompatible, and make that holding as matter of law, the submission of the question to the jury at all was a gratuity. The court should have ruled it

against the defendant. So the defendant was unharmed by the error, if one was committed. *LaMountain's Admx.* v. *Rutland R. R. Co.*, 93 Vt. 21, 26, 106 Atl. 517; *Goupiel* v. *Grand Trunk Ry. Co.*, 96 Vt. 191, 193, 118 Atl. 586, 30 A. L. R. 690.

*Affirmed.*