EUGENE B. O'NEIL'S (dependent's) CASE.

Suffolk. November 4, 1935. — December 30, 1935.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & QUA, JJ.

*Insurance*, Cancellation, Workmen's compensation insurance. *Workmen's Compensation Act*, Injuries to which act applies. *Jurisdiction. Admiralty.*

The evidence warranted a finding that a policy of workmen's compensation insurance was validly cancelled by surrender by the assured accepted either by an authorized general agent of the insurer or by the insurer itself, without the giving of the notice required for cancellation by one of the parties only.

Where one employed as part of a "shore crew" on and about a boat tied up to a wharf was instructed by his employer to take an automobile standing on the wharf and to do an errand, and the employee ran the automobile off the wharf and was drowned, the Massachusetts workmen's compensation act was applicable, not the Federal longshoremen's and harbor workers' compensation act.

CERTIFICATION to the Superior Court under the provisions of the workmen's compensation act of a decision by the Industrial Accident Board awarding compensation, to be paid by the Great American Indemnity Company.

The claimant and the Great American Indemnity Company appealed from a decree entered by order of *Brogna*, J., in accordance with the board's decision.

*A. L. Hyland,* for the claimant.

*J. F. Doyle,* (*A. V. Sullivan* with him,) for Great American Indemnity Company.

*G. Gleason,* (*W. G. Reed* with him,) for Employers' Liability Assurance Corporation, Limited.

QUA, J. On June 15, 1934, Eugene B. O'Neil was employed as one of a "shore crew" on and about a fishing trawler, which was tied up at the Fish Pier, so called, in Boston. He was told by his employer's manager to take the manager's automobile, then standing on the wharf, and to go "up town" to get some pitch. In some manner he allowed the automobile to run off the wharf and was drowned.

On January 15, 1934, his employer had taken out compensation insurance in the Employers' Liability Assurance Corporation, hereinafter called the Employers', and on March 18 of the same year it had taken out similar insurance in the appellant Great American Indemnity Company. No question is now made as to the claimant's right to compensation, nor as to the duty of each insurer to pay half of it, if both policies remained in force. We need not pass upon the matter of joint liability. See as to successive insurers *Donahue's Case,* 290 Mass. 239. The only question at issue arises out of the contention of the Employers', adopted by the Industrial Accident Board, that its policy had been canceled before the accident.

There was evidence tending to show these facts: On March 6, 1934, O'Neil's employer wrote to the broker

through whom it had secured the policy in the Employers' stating that it was "returning herewith" the policy and adding, "Kindly cancel." The broker returned the policy "for cancellation" to the general agents of the Employers' who had issued it, with a statement requesting a credit for full return of the premium. The letter of March 6 was shown to the general agents "at the time." They retained the policy. A clerk in their employ saw it about April 21. Their clerk in charge of cancellations received it on April 25. He made out a cancellation voucher. That meant that the policy was canceled. The same day he sent the policy with the voucher to the Employers' to let them know "of the action that he took." The policy came into the cancellation department of the Employers' April 27, 1934. It "was cancelled back more than sixty days." On June 14, the day before the accident, the Employers' issued a notice to the Massachusetts Rating and Inspection Bureau that it had canceled the policy. On June 16, the day after the accident, the Employers' attached to the policy a rider stating that the policy was canceled as of January 15, the date of issue. This rider was "just for inside purposes."

We think this evidence, although not altogether clear, will support a finding that the policy in the Employers' had been canceled by surrender by the insured and acceptance, either by the general agents, who could be found to have had authority, or by the company itself, before June 15. *Parker & Young Manuf. Co.* v. *Exchange Fire Ins. Co.* 166 Mass. 484. *Berton* v. *Atlas Assurance Co.* 203 Mass. 134. *Michelson* v. *Franklin Fire Ins. Co. of Philadelphia,* 252 Mass. 336, 341. *Celi* v. *Pennsylvania Fire Ins. Co.* 269 Mass. 225. *Walters* v. *St. Joseph Fire & Marine Ins. Co.* 39 Wis. 489. There was other evidence from which it could be found that the delay in affixing the cancellation rider "for inside purposes" was due to the necessity that the company be reimbursed for a trifling loss which had occurred since the date of the policy, before it could rebate the premium back to January 15, but this did not prevent the termination, at the will of the parties, of the insurer's obligation for further losses.

We see no reason why both parties to the policy could not agree to terminate the coverage by mutual consent without giving notice in the particular form required by the policy for cancellation by one of the parties only. G. L. (Ter. Ed.) c. 175, § 187C. *Whoberry* v. *National Liberty Ins. Co.* 230 Ky. 19. Compare *Altinovitch's Case,* 237 Mass. 130.

It follows that the finding of the board that on June 15 the employer was covered only by the Great American Indemnity Company must stand. For aught that appears this finding is based upon all the evidence. We need not decide whether the subsidiary finding that the policy was canceled as early as March 16 could stand alone.

As the accident which caused O'Neil's death had its origin upon the wharf and not upon navigable waters, *T. Smith & Son, Inc.* v. *Taylor,* 276 U. S. 179, *Wolf's Case,* 285 Mass. 181, we have no occasion to inquire what rights an employee coming within the scope of the longshoremen's and harbor workers' compensation act (44 U. S. Sts. at Large, 1424) might have to claim that the coverage under that act was still in force. Act of March 4, 1927, c. 509, §§ 3, 36; 44 U. S. Sts. at Large, 1426, 1441.

*Decree affirmed.*