[Civil No. 4066.   Filed October 16, 1939.]

[94 Pac. (2d) 770.]

ACACIA MUTUAL LIFE ASSOCIATION, a Corporation, Appellant, v. NEWTON JOHN BERRY, Appellee.

Mr. T. G. McKesson, for Appellant.

Mr. H. S. McCluskey, for Appellee.

LOCKWOOD, J.—Newton John Berry, hereinafter called plaintiff, brought suit against Acacia Mutual Life Association, a corporation, hereinafter called defendant, seeking to recover on a certain insurance policy. The defendant demurred on the ground that the complaint did not state a cause of action, and the demurrer being sustained and plaintiff electing to stand on the complaint, judgment was entered for defendant, whereupon plaintiff appealed. We reversed the case, stating that the complaint set up a good cause of action as against the defendant, and remanded it to the trial court with instructions to overrule the general demurrer, and for such other proceedings as were

advisable. 49 Ariz. 413, 67 Pac. (2d) 478. The general demurrer was overruled by the trial court, in accordance with the opinion of this court, and subsequent thereto defendant filed several additional pleadings attacking the complaint. Among these were a special demurrer on the ground of subd. 3 of sec. 2061, Revised Code of 1928; a plea in bar based on the same subdivision; various other special pleas and defenses, which we need not now specify, and an answer admitting the execution of the policy in question at defendant's home office in Washington, D. C., on or about June 1, 1930, and denying all the other allegations of the complaint. The plaintiff moved to strike the amended pleadings filed by the defendant, which motion was denied, and the case was tried before the court sitting without a jury. Various findings of fact and conclusions of law were made, and a judgment rendered thereon in favor of plaintiff, whereupon this appeal was taken.

There are a number of interesting points raised by the many assignments of error made by defendant and the cross assignments interposed by plaintiff, but we think we need consider only two questions of law. First, did the court err in denying plaintiff's motion to strike the new defenses interposed at the second trial of the case, and second, if such action was not error, does the statute of limitations bar plaintiff's action.

So far as the first question is concerned, under the long established practice of this court, the lower court did not err in permitting defendant to set up the various defenses raised by it for the first time at the second trial. We think this is conclusively settled by the cases of *Perrin* v. *Mallory Com. Co.,* 8 Ariz. 404, 76 Pac. 476; *State* v. *Smith,* 43 Ariz. 131, 29 Pac. (2d) 718, 92 A. L. R. 168; *State* v. *Smith,* 43 Ariz. 343, 31 Pac. (2d) 102, 92 A. L. R. 173, *Senate Silver Mining Co.* v. *Hackberry Consol. Mining Co.,* 24

Ariz. 481, 211 Pac. 564, and *Boyle* v. *Webb,* (Ariz.) 94 Pac. (2d) 642 (just decided but not yet reported [in State Reports]).

We come then to the question of whether the record shows that the plea of the statute of limitations should have been sustained. Section 2061, Revised Code of 1928, reads, so far as material, as follows:

"There shall be commenced and prosecuted within four years after the cause of action shall have accrued, and not afterward, the following actions: . . . 3. upon a judgment or decree of any court rendered without this state, or upon an instrument in writing executed *without* this state." (Italics ours.)

While the first sentence of section 2062, Revised Code of 1928, is in this language:

"Actions for debt where the indebtedness is evidenced by or founded upon a contract in writing, executed *within* this state, shall be commenced and prosecuted within six years after the cause of action has accrued and not afterward." (Italics ours.)

This action was commenced more than four, and less than six, years after the cause of action accrued.

The question then is whether the insurance policy upon which this action is based was "executed" within or without the state of Arizona. If the former, section 2062, *supra,* applies and the action is not barred by the statute. If the latter, subd. 3 of sec. 2061, *supra,* governs the situation, and the plea of limitations should have been sustained.

The facts upon which we must determine this question are not in serious dispute, and may be stated as follows. On April 21, 1930, plaintiff made a written application to defendant for the policy in question. After setting up various matters, the application concluded with the following language:

"13. I agree that the above statements and answers and all those that I may make to the Associa-

tion's Medical Examiner, in Part II of this application, whether written by me or not, are true, and are offered to the Association as a consideration for the Policy of Insurance that may be issued in pursuance thereof; that said Policy of Insurance shall not take effect until this application has been approved by the Association, and the first payment required thereon made during my life and continuance in good health," and was signed by plaintiff. At the same time he gave the agent of the defendant, who took the application, a check for $62.60, which covered four months' premium on the policy at the rate fixed by the defendant. The check was made directly to the agent, instead of to the defendant, but the former, when he sent in the application, stated that he had collected this premium in cash and that he forwarded it with the application. At the same time the agent issued to the applicant a printed receipt, which had been attached to the application, reading, after the blanks had been filled in, as follows:

"April 21, 1930

"Received of Newton John Berry the sum of sixty-two and 60/100 ($62.60) dollars, as a deposit with his application for a policy of insurance. If the application is accepted in the form applied for, said policy will be in force for the amount approved and accepted by the association from the date of final acceptance of the same, for the length of time and no longer than this deposit will pay for at the regular premium rate on the policy issued. Should the policy not be issued as applied for, the deposit shall be promptly refunded to him.

"Any correction in or addition to this receipt is void. If you do not receive your policy of insurance within three weeks after your medical examination notify the home office.

"CHAS. I. ICE,
"Signature of Agent."

A medical examination was made by the defendant's physician two days later and a report of it, together with the application, was sent to the home office of the defendant in Washington, D. C. On the 1st

of June the defendant issued the policy requested by the plaintiff, which reads so far as material as follows:

"Acacia Mutual Life Association
"Washington, D. C.

" . . .

"Receives Newton John Berry as a member, and promises to pay $10,000.00—Ten Thousand Dollars to Crissie Berry, his wife, if living, otherwise to Roberto May Daggs, his stepdaughter, beneficiary, or such other beneficiary or beneficiaries as may be designated in accordance with the provisions hereof, immediately upon receipt of satisfactory proof of said member's death, provided the member's death shall occur prior to the anniversary of this policy nearest his 65th birthday.

"The consideration for the above promise is the application for this policy, a copy of which is attached hereto and made a part hereof, and the payment of an annual premium of one hundred eighty-seven & 20/100 dollars payable in advance upon delivery of this policy, or in installments as provided herein, and the payment of a like amount on or before each anniversary date of this policy thereafter until premiums have been paid to the policy anniversary date nearest the member's 65th birthday, or until his prior death.

" . . .

"This policy is issued and accepted by the parties in interest, subject to the foregoing and to the provisions stated on the second, third and fourth pages hereof, which are a part of this policy.

" . . .

"In Witness Whereof, the Acacia Mutual Life Association of Washington, D. C., has by its President and Secretary executed this contract this first day of June, 1930.

"J. P. YOST                    WM. MONTGOMERY
     "Secretary                           President

"Payment of Premiums and Grace in Payment.

"This policy is based upon payment of premiums annually in advance, but premiums may be made payable in monthly, quarterly or semi-annual installments

at the rate stated herein, provided that any unpaid premiums required to complete payment for the current policy year in which death occurs shall be considered an indebtedness on account of this policy.

"Premiums are payable at the home office of the Association, but may be paid to an authorized agent of the Association on or before the dates when due, in exchange for official receipts signed by the president or the secretary and countersigned by said agent."

The policy was then sent to the agent in Phoenix, who had written it, and was by him delivered personally to plaintiff some time shortly after the first day of June, 1930.

■■ On this state of facts, was the contract "executed" in Arizona or in Washington, D. C.? If it was in Arizona, the plea of the statute of limitations is not good; if it was in Washington, D. C., the contrary is true. A contract of insurance, like any other contract, is completed by an offer and acceptance. In an insurance policy, the offer is generally the written application, accompanied by the report of the medical examiner, and the acceptance occurs when the insurer agrees to accept the application and to issue the policy, unless there has been some other condition precedent to the completion of the contract agreed to by the parties. 32 C. J. 1105, and cases cited.

■ In the present case the application states on its face the policy takes effect when

"this application has been approved by the Association, and the first payment required thereon made during my life and continuance in good health."

At the time the application was made, the plaintiff paid the sum of $62.20 thereon in cash. The application and the report of the medical examiner were sent to the home office of the defendant in Washington, D. C., and on the 1st day of June the defendant, over its hand and seal, promised to pay the face of the policy to the beneficiary named therein, and stated

that the consideration was the application and the payment of the annual premium of $187.20, payable in advance upon delivery of the policy, "or in installments as provided herein," and the policy further stated that the premiums might be paid monthly, quarterly or semi-annually. We think that under all the authorities, a policy containing these conditions was in full force and effect, and binding upon the defendant as soon as a payment of not less than one month's premium was made, and the application was approved. The record shows conclusively that such payment was accepted by the defendant's agent and forwarded with the application to defendant at its home office in Washington, D. C., and the application was there accepted and the policy issued. Actual physical delivery of the policy was later made in Arizona. Where, then, was the contract executed? Let us assume that after the policy had been issued in Washington, but before its actual physical delivery to the plaintiff, he had been killed in an accident, can there be any question that the beneficiary could have recovered upon the policy, even though physical delivery was never made? The case of *Kansas City Life Ins. Co.* v. *White,* 33 Ariz. 303, 264 Pac. 474, 476, deals with a situation in which the question arose as to whether a certain policy was in effect. In that case, the application had been made, and a note, instead of a check, given to the agent of the company in payment of the premium. The application was forwarded to the home office of the company. No cash accompanied it, but following its usual custom in such circumstances, the company charged its agent with the amount of the premium. The policy was approved on August 3d and sent to the company's agent in Phoenix who, in turn, remailed it to the soliciting local agent in Prescott. It was never physically delivered to the insured, but was returned to the company and by it marked cancelled in September, for the

reason that the company had discovered the insured was participating in aviation, and it did not wish to insure that class of a risk. This rule of the company, however, was not stated in either the application or the policy. It had thus never passed into the physical possession of the insured, although his application had been approved and the policy issued thereunder by the company, and the agent of the company charged by the latter with the full amount of the premium. On October 8th, and after the policy had been returned to the company and marked cancelled, the insured was killed by the fall of an airplane. The only question involved was whether the contract was a completed one when the application was approved and the policy made out and mailed to its agent for delivery. We held as follows:

"The law seems to be well settled that it is sufficient delivery of the policy when the application is approved and the policy issued in accordance with the plan and for the amount of the application and mailed by the insurance company to its agent for delivery to the insured. The rule is stated in *Unterharnscheidt* v. *Missouri State Life Insurance Co., supra* [160 Iowa 223, 138 N. W. 459, 45 L. R. A. (N. S.) 743], as follows:

" 'It is quite obvious that this may or may not be true according to the circumstances under which the policy is placed in the agent's hands. If the premium is paid when the application is presented, and such application is approved and policy executed as of that date, and nothing remains but to deliver the paper to the insured, it may well be held that the sending of it to the agent to be by him given over to such insured person constitutes a sufficient delivery in law. To say the least, the neglect or omission of the agent under such circumstances to perform the manual act of placing the policy in the hands of the insured will not serve to suspend or postpone the obligation of the company upon its contract. In other words, delivery in law is not necessarily manual delivery.'

"The fact that the insured paid no attention to the request of the defendant to modify the policy, after it was issued, by a stipulation to waive its liability in the event he should come to his death while engaged in aviation, cannot in any way affect the validity of the policy, if it was valid without such clause at the time of its issuance and delivery. He had a right to stand upon his contract of insurance as it was written, and was within his rights in refusing to permit the alteration or change. The policy could be canceled by the defendant only upon the grounds therein stipulated, and it contained no clause providing for its cancellation in case the insured should engage in aviation."

■■ We think this case conclusively settles the law in Arizona to be that physical delivery of the policy to the plaintiff was not essential to the completion of the contract, but that when the application was accepted and a payment on the premium sufficient to maintain the policy in force for at least one month had been paid to, and accepted by, the defendant, the contract of insurance was "executed" within the meaning of the statute. The question of whether at this time the plaintiff was in good health or not is immaterial in the present case. If he was, the policy was in effect when it left Washington. If he was not, and that is a condition precedent to its taking effect, it never was a valid policy and he cannot recover on it under any circumstances.

We hold that on the undisputed record, the issuance of the policy by the defendant in Washington, D. C., completed the contract of insurance, and that it made no difference whether it was ever delivered physically to plaintiff or not. It was a valid, existing policy from that date until it expired, for reasons arising subsequent to its issuance. The trial court should, therefore, have sustained the plea in bar of the statute of limitations.

The judgment is reversed and the case remanded with instructions to enter judgment in favor of defendant.

ROSS, C. J., and McALISTER, J., concur.