# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-CA-00065-SCT

*WILLIAM "BILLY" PEGRAM*

*v.*

*WAYNE BAILEY*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/28/95 |
| TRIAL JUDGE: | HON. FRANK ALLISON RUSSELL |
| COURT FROM WHICH APPEALED: | TUNICA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WEBB FRANKLIN |
| ATTORNEY FOR APPELLEE: | M. LEE GRAVES |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED - 5/8/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/29/97 |

**BEFORE PRATHER, C.J., ROBERTS AND MILLS, JJ.**

**ROBERTS, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. This case comes before this Court on appeal as a result of an election contest brought by Wayne Bailey, a candidate for the office of Supervisor of Beat Five, Tunica County, against William "Billy" Pegram, a candidate for the same office, regarding the election of Tuesday, August 29, 1995, in the Democratic Primary run-off. The Tunica County Democratic Executive Committee (DEC) held an election run-off on August 29, 1995, which resulted in a tie vote between the two candidates. Pursuant to Miss. Code Ann. § 23-15-601 (1972), the DEC drew lots and Pegram was selected by lot as the winner of said election. The DEC then certified Pegram as the winner of the Democratic Election Primary. No other candidates qualified to run for the office in the Republican Primary or in the general election.

¶2. Bailey filed a petition contesting the primary election with the DEC, and a hearing was held by the DEC on Tuesday, September 28, 1995, wherein the DEC reaffirmed the certification of Pegram as the winner of the election. On October 4, 1995, Bailey filed his petition for judicial review in the Circuit Court of Tunica County. As a result of his filing Judge Frank A. Russell of the First Circuit

Court District of Mississippi was designated to hear and determine the election contest. Judge Russell entered his order on November 20, 1995, setting the Petition for Judicial Review for hearing on December 6, 1995.

¶3. On December 6, 1995, a trial on the issues was heard before Judge Russell with all five of the duly elected and qualified election commissioners of Tunica County sitting as advisors to the Court. At the trial Bailey alleged that four absentee ballots were improperly rejected by the election officials and urged the court to overturn the DEC's decision and count the four rejected votes. Pegram prevailed at the trial as to three of the questioned ballots. The court, in its opinion of December 22, 1995, found for Bailey as to the absentee ballot of Betty W. Hall. It directed the DEC to reconvene, open, and count the vote of Betty W. Hall.

¶4. After the judge issued his Order, the election commissioners, who sat as advisors to the court during the trial, filed their dissent to the court's Order and Opinion. Therein they all agreed that the proof adduced at the trial conclusively showed that the signatures in question did not match and that the absentee ballot of Betty W. Hall should not be counted. Also after the judge entered his order and opinion, Pegram filed a sworn motion for a new trial based on newly discovered evidence. Pegram also filed a motion requesting the lower court to stay its Order, and to grant him an appeal with supersedeas on December 28, 1995. The lower court entered its Order denying both motions at 4:45 p.m. on the same day.

¶5. In accordance with the judge's original Order, the DEC convened at 7:00 p.m., opened the ballot of Betty W. Hall, declared that it was a vote for Bailey, and telephonically notified the court of its action. At 7:15 p.m., the court entered its Final Order declaring Bailey the winner of the election and declaring that he be sworn in for a term of 4 years beginning on the first Monday of January, 1996. The next morning at 10:00 a.m., Bailey was sworn in to serve as directed by the court.

¶6. On January 26, 1996, Pegram filed his Motion to Stay in this Court asking for his appeal to be granted with supersedeas vacating the Final Judgment of the lower court and directing reinstatement of the certification of the DEC declaring him the winner of the election, and further requesting that he immediately be sworn in to serve in that capacity pending the appeal. Alternatively, he requested the Court grant his appeal with supersedeas staying the Final Judgment of the lower court and directing that the office of Tunica County Supervisor District Five be declared vacant pending the appeal. On March 22, 1996, this Court entered its Order denying the Motion for Stay and directing that this case be advanced on the docket for expedited consideration.

## STATEMENT OF THE FACTS

¶7. The parties prior to trial stipulated as to most of the facts surrounding this case. Counsel for each side also agreed that the matter would be tried without expert testimony. The parties agreed that this would lessen expenses and expedite a resolution to this case.

¶8. The vote in the election for Supervisor of District Five resulted in a tie with each candidate receiving 262 votes. The DEC resolved the tie in compliance with Mississippi law by following the statutorily prescribed procedure of drawing lots. Pegram prevailed in the draw and was certified to be the winner of the election by the DEC.

¶9. There were originally four absentee ballots which were challenged by Bailey. However, during the course of the trial, Bailey failed to present any evidence on two of the four contested ballots, thereby electing not to contest the other two ballots. The Court only heard testimony and received evidence concerning two of the absentee ballots which had been rejected by the election managers and the DEC. The failure of the signatures on the absentee ballot application and the ballot envelope to correspond was the reason cited for the rejection of the ballots.

¶10. Bailey contended that there were no signature differences; therefore, the absentee votes should have been counted. Pegram argued that the signatures were different and the DEC correctly excluded the ballots from the count.

¶11. The first contested ballot was that of Bennie Frazier, a 90 year-old blind man, who testified that he did not sign his name on the application or the ballot envelope. He testified that his daughter, Everlean Jones, signed all of his ballot materials. Mrs. Jones corroborated this by her testimony. The application signature and the signature of the absentee ballot envelope was compared, and a difference was found to exist. There was an "X" before the signature of Bennie Frazier on the application, and the absence of an "X" on the absentee ballot envelope. Mrs. Jones offered an explanation for the "X" by stating Bailey had marked the signature line to indicate where the voter should sign the ballot envelope. The DEC printed "rejected, signature difference" on the outside of the envelope. The judge, along with all five election commissioners concurring, found from all of the evidence and testimony that there was in fact a signature difference with respect to the vote of Bennie Frazier. In its Order sustaining the DEC decision, the court concluded Frazier's ballot was properly excluded.

¶12. The other contested ballot, which is the one raised on appeal, was supposedly cast by Betty W. Hall. At the time of the trial she was 92 years-old and confined to a wheelchair. The lower court concluded that there were no signature differences on the application for absentee ballot pertaining to Mrs. Hall's vote and the ballot envelope, and directed that Mrs. Hall's vote be opened and counted. When counted, the vote was for Bailey. With the inclusion of Mrs. Hall's ballot, Bailey received 263 votes and Pegram received 262 votes. Based on the new vote totals and pursuant to the court's Order, Bailey was sworn in to serve a term of 4 years as Supervisor of District Five of Tunica County.

¶13. Aggrieved of the lower court's decision, Pegram appeals to this Court raising the following assignments of error:

> **I. WHETHER THE TRIAL JUDGE ERRED IN FINDING THE SIGNATURES OF BETTY W. HALL ON HER BALLOT APPLICATION AND BALLOT ENVELOPE MATCHED.**

> **II. WHETHER THE TRIAL JUDGE ERRED BY FAILING TO GRANT PEGRAM A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE.**

## DISCUSSION OF ISSUES

¶14. The trial judge found the signatures of Betty W. Hall to be the same on the application for the absentee ballot and the envelope containing the ballot itself. The signatures in question have been

appended to this memorandum as "Appendix I."

¶15. Several persons who were actively involved in the vote counting process of the election had to make a determination as to whether the signatures corresponded. At each stage of the process, all who were officially called upon to make such determination found in favor of Pegram, except the trial judge. He found that the signatures did correspond.

¶16. According to Miss. Code Ann. § 23-15-639, after the polls close, the precinct election managers review the absentee ballots to determine if the signatures on the application correspond with the signature on the envelope containing the ballot. The poll workers at the Two Mile Lake precinct in Tunica County, first made the determination that the two questioned signatures of Hall did not match. Therefore, the poll workers marked across the face of the envelope "rejected-signature differences" pursuant to Miss. Code Ann.§ 23-15-641. The next day the DEC met to canvass the votes and to certify the election. Joe Eddie Hawkins, chairman of the DEC, testified that there were either 16 or 17 of the total 27 members of the DEC present during this proceeding. Both candidates were present at this meeting. During the meeting Mrs. Hall's ballot and application were passed around the Committee for observation by all in attendance. This was done in order to ensure that all were in agreement that the signatures were not the same. Hawkins further testified that he did not recall any of the DEC members present at the meeting voting to count the ballot.

¶17. Later Bailey filed a petition with the DEC, pursuant to Miss. Code Ann. § 23-15-921, to have the decision not to count Mrs. Hall's ballot reviewed. A hearing was held before the DEC where Bailey's attorney presented evidence. A majority of the DEC was present. However, Pegram was not present and presented no evidence. After hearing Bailey's evidence, the DEC again reviewed the ballots and stated, ". . .the signatures did not appear to be the same. . . ."

¶18. At the judicial review trial of the decision handed down by the DEC, all five members of the Tunica County Election Commission sat with the trial judge in an advisory capacity to assist in the trial and the determination of facts according to Miss. Code Ann. § 23-15-931. The judge noted in his Opinion and Order that the "commissioners did not agree with the Court's determination as to the signatures of voter Betty Hall." Two working days after the judge entered his Opinion and Order, the disagreement between the Election Commission and the judge regarding the validity of Mrs. Hall's absentee ballot was detailed in a formal dissent filed in the court below under the provisions of Miss. Code Ann. § 23-15-933. The dissent was detailed and specific as to the reasons drawn from the evidence which supported the Election Commission's conclusion that the signatures of Mrs. Hall did not match.

¶19. The dissent by the Election Commission is as follows:

> As to the contested ballot of the voter, Mrs. Betty Hall, the election commissioners unanimously found at the trial that the Democratic Executive Committee was eminently correct in refusing to count Mrs. Hall's ballot. The election commissioners are also unanimously of the opinion that the findings of the Court concerning Mrs. Hall's ballot are incorrect and are not substantiated by the proof presented at the trial.

¶20. Specifically, the election commissioners disagree with the Court as follows:

a) The commissioners disagree with the finding of the Court in Paragraph I, sub-paragraph h, of the Opinion. The Court found that Mrs. Hall's absentee application was, according to her testimony, signed by her and that two witnesses corroborated her testimony. The commission is collectively and unanimously of the opinion that Mrs. Hall's testimony is highly suspect. The commission finds that Mrs. Hall is a well meaning 92 year old, who was totally confused concerning the whole election process as it pertained to her absentee ballot application. She testified that a person witnessed the application whose name did not appear on the application and who was not called as a witness. Her testimony is also highly suspect because when shown the application on the stand, we were of the opinion that she could not read the name of the witness. We believe from the evidence that this fact was clear and meant simply that Mrs. Hall could not see well enough to read the application or to even recognize who signed the application as a witness. The commissioners also unanimously agree that the corroborating witnesses to the signature on the ballot application are also highly suspect. That testimony came from Wayne Bailey, a candidate and the contestant, and a relative of the contestant, Theresa Lee Bailey. Upon examination of the ballot application, the commissioners feel that the same person who wrote Betty W. Hall in the identifying blank also signed the signature blank. The witness signature of Theresa Lee Bailey appears to be similar to the signature of Betty W. Hall on the ballot application.

b) Most convincing to the election commissioners, was the fact that on visual examination the signature on the ballot application of Betty W. Hall does not correspond with the signature of Betty W. Hall on the ballot envelope. It is apparent to the election commissioners that the signature on the ballot application is written in a much younger handwriting than the signature on the ballot envelope. The election commissioners are unanimously of the opinion that the two signature of Mrs. Hall, one on the application and the other on the ballot envelope, do not match and were written by different people.

c) The ballot envelope was witnessed by Mr. Youngblood who cannot read or write, who is a friend and helper to Mr. Bailey, and who actually took the ballot of Mrs. Hall's mailbox in Tunica County and delivered it to her in Tate County. The signature on the ballot envelope is closer to the known signature of Mrs. Hall, but still does not match the signature on the application.

d) Additionally, in reviewing the evidence the commissioners were afforded exemplars from the family bible of Betty W. Hall and in comparing those signatures of Betty W. Hall in her family bible to the signature on the ballot application, the commissioners are of the opinion that those signatures do not match.

e) The commissioners agree with the Court in its statement that just because a voter is elder is not itself a reason to "super scrutinize" their signature. However, we collectively find that a signature difference is obvious when examining the ballot application and the ballot envelope. A simple examination of both signatures leads us to conclude that two different people signed the application and the ballot envelope. We further find that the testimony of Mrs. Hall that she signed both the ballot application and the ballot envelope is contrary to the evidence. Mrs. Hall could not read the signature of the witnesses on either the application or the envelope and we are of the opinion that she could read her name but could not ascertain whether or not she

actually executed both documents or not.

f) In arriving at their unanimous conclusion, the commissioners took into consideration the testimony of the chairman of the Democratic Executive Committee, Joe Eddie Hawkins, and a member of the Democratic Executive Committee, Lil Battle Hall. Both of those witnesses testified that the contestant, Wayne Bailey, admitted to them at the canvas and in the presence of the entire Democratic Executive Committee that he, Mr. Bailey, knew that Mrs. Hall's ballot had been handled and signed by Mrs. Hall's daughter. Mr. Hawkins further testified that he entered into the minutes of the Democratic Executive Committee at the hearing requested by Mr. Bailey the fact that Mr. Bailey had, in effect, admitted that the signatures on the Hall ballot were inconsistent and that the admission had been made to him at the canvas.

g) Finally, in dissenting from the Court's opinion concerning Mrs. Hall['s] ballot, the election commission unanimously agreed that upon their individual visual inspection of the signatures on the ballot application and the ballot envelope that the signatures did not match. Additionally, the commissioners took into consideration the fact that the election managers at the polls on the night of the election arrived at the same conclusion that the signatures did not match. The commissioners further took into consideration that at the canvas of the Democratic Election Commission all of the members of the election commission present looked at the signature on the ballot application and the ballot envelope and all of the members of the Democratic Executive Committee agreed that they did not match. Additionally, the election commissioners took into consideration the fact that the Democratic Executive Committee held a hearing at which basically the same evidence which was introduced at the trial was presented before the executive committee. The executive committee after reviewing that evidence, unanimously agreed that the evidence presented was insufficient to change the opinion of the Democratic Executive Committee that this ballot should not be counted because the signatures did not match.

In conclusion, we are unanimously of the opinion that the action of the Democratic Executive Committee was correct in not counting the questioned ballot of Mrs. Hall. We also unanimously agree that the Court in its opinion directing that Mrs. Hall's ballot should be opened and counted is incorrect and against the overwhelming weight of the evidence presented before us.

¶21. Theresa Lee Bailey testified that she, along with Bailey, traveled to Strayhorn in Tate County to deliver to Mrs. Hall the absentee ballot application, and that Mrs. Hall signed the application in the store in the presence of Bailey and Mrs. Hall's daughter, which she witnessed. However, Mrs. Hall testified that Theresa Lee Bailey never helped her fill out an application. It was also apparent from Mrs. Hall's testimony that she was unclear as to how many applications she had signed: "I signed them two. I believe I signed three. I don't remember. I know I signed two."

¶22. Pegram contends the clearest evidence of who actually signed Mrs. Hall's documents comes from Bailey himself. Joe Eddie Hawkins testified that Bailey told Mrs. Lil Hall, another member of the Committee, that he knew the signatures of Mrs. Betty W. Hall matched because he, Bailey, knew Mrs. Betty Hall's daughter had signed both the application and envelope.

Q. Did you hear either of the candidates say anything concerning the signatures on that ballot and whether it should or shouldn't be counted?

A. Well, once we went into recess Mrs. Lil Hall and my self was standing at the table and Mr. Bailey came up and he said to both of us, in both of our presence that the signatures, he was sure that the signatures were the same for Mrs. Hall because her daughter did it. That's what he said.

Q. Who said that?

A. Mr. Bailey.

Q. Who did he say it to?

A. He said it in the presence of Mrs. Hall and myself, and Mrs. Hall stated that well, if that's the case, then Mr. Bailey, or something of that nature, it shouldn't count anyway, because her daughter did it instead of Mrs. Hall. And that's what was said and that was the truth of it.

¶23. Mr. Hawkins' testimony was corroborated by Mrs. Lil Battle Hall concerning the remarks by Bailey. She testified:

Q. Mrs. Hall, I call your attention to the day after the election when the committee was called upon to review all the absentee ballots and particularly that ballot of Mrs. Hall. Do you recall a conversation by either of the candidates concerning that ballot and how it was obtained and signed?

A. Yes, I do.

Q. Would you relate that conversation that any of the candidates had with you and any other members of the Executive Committee concerning that particular application and ballot?

A. Well, we were getting ready to go into recess and Joe Eddie Hawkins and I were standing beside the gate and Wayne Bailey said that this ballot had been signed by Betty Hall's daughter. And I remember it because I remember Joe Eddie turning around and asking them to put it in the minutes that he had said that, so it was kind of brought to everybody's attention.

Pegram argues that this was in the form of an admission against interest made by Bailey to two members of the Democratic Executive Committee at the canvass the day after the election. When viewing Bailey's statement under M.R.E. 801(d)(2), Pegram is correct by classifying it as an admission against interest.

¶24. Pegram contends the trial judge simply "missed the boat" in finding that the two signatures in question of Mrs. Betty W. Hall matched. This Court has the authority to view the evidence and make its own findings under Miss. Code Ann. § 23-15-933. The statute provides:

The contestant or contestee, or both, may file an appeal in the Supreme Court within the time and under such conditions and procedures as are established by the Supreme Court for other appeals. If the findings of fact have been concurred in by all the commissioners in attendance, provided as many as three (3) commissioners are and have been in attendance, the facts shall not be subject to appellate review. But if not so many as three (3) of the commissioners are or have been in attendance, or if one or more commissioners dissent, upon review, the Supreme

Court may make such findings as the evidence requires.

¶25. The only question is whether the signature of Betty W. Hall on the application for the absentee ballot corresponds with the signature of Betty W. Hall on the envelope which contained her absentee ballot. If the signatures do not correspond, this vote is not counted pursuant to Miss. Code Ann. § 23-15-641. If this vote is not counted, the winner of the election is Pegram, because he was originally selected by the DEC when the committee drew his name by lot.

¶26. By virtue of Miss. Code Ann. § 23-15-931, the special judge is the "controlling judge" of both the facts and the law, although the election commissioners sit as advisors to the determination of the facts. The statute strongly suggests the special judge is the "true trier of facts." *Hatcher v. Fleeman*, 617 So. 2d 634, 639 (Miss. 1993); *citing* *Rizzo v. Bizzell*, 530 So.2d 121, 126 (Miss.1988). Generally, we will defer to the findings made by the special judge. *Id.*

*¶27.* We find that the two signatures are different, and they simply do not correspond. Pursuant to Miss. Code Ann. § 23-15-641, all that is required for the ballot to be rejected by the election commissioners or election managers is for the signatures to not correspond.

¶28. In *Employers Mutual Casualty Co. v. Nosser*, 164 So. 2d 426, 438 (Miss. 1964), this Court dealt with a chancellor's findings of fact based on authenticated documents. Following the rule established in *Northern Assurance Co. v. J.J. Newman Lumber Co.*, 63 So. 209, 211(Miss. 1913) (when it becomes necessary for this Court to construe written documents, we must follow our construction, and not the chancellor's), the Court determined that it had the right to make its own construction of authenticated written documents. In *Employers Mutual* the Court reversed the "decree of the chancellor based upon findings which are manifestly incorrect, against the overwhelming weight of the evidence, some of which consists of written documents the contents of which are not in dispute." *Employers Mutual Casualty Co.*, 164 So. 2d at 438.

¶29. Given this Court's authority to view the evidence as presented and make its own determination, we find the signatures to be clearly different and do not correspond as required by statute. Therefore, it appears that the trial judge committed manifest error in overruling the decisions by the DEC and the election commission to not count the ballot of Mrs. Hall. The justification the judge gave in making his decision is found in his Opinion where he stated "[j]ust because a voter is elderly is not itself a reason to 'super scrutinize' their signature." While we agree with this statement, the overwhelming evidence reflects a difference in signatures, which is all the statute requires for rejection of a ballot.

¶30. The only response by Bailey to this issue of Pegram's appeal is that the election commissioners rejected the ballot for a different reason other than the failure of the signatures to correspond. Bailey states that the reason given by the election commission in rejecting the signatures was that there were signature differences. He claims there is nothing in the statutes that enumerate signature differences as a possible reason for rejecting an absentee ballot. Therefore, his argument is that the election commission came up with a new reason, not listed in the statutes, for rejecting the absentee ballot. Bailey contends that the absentee ballot of Betty W. Hall should have been counted because the election commission did not comply with the directives of the statute.

¶31. In *McMillan v. Puckett*, 678 So. 2d 652 (Miss. 1996), Justice Banks wrote in his dissent a

thorough discussion of how this Court interprets language contained in statutes in order to ascertain the true legislative intent of the statute.

> This Court has held that statutes should be given a reasonable construction, and if susceptible of more than one interpretation, they must be given that which will best effectuate their purpose rather than one which would defeat it. ***Brady v. John Hancock Mut. Life Ins. Co.***, 342 So.2d 295 (Miss.1977); ***Aikerson v. State***, 274 So.2d 124 (Miss.1973) (holding that the Supreme Court will not only interpret words used, but will consider purpose and policy which legislature had in view in enacting law). Where a popular word used in a statute is given no statutory definition, the word must be accepted in its popular sense, and the court must attempt to glean the legislative intent from the statute. ***Lambert v. Ogden***, 423 So.2d 1319 (Miss.1982); *see also* ***Quarles v. St. Clair***, 711 F.2d 691 (5th Cir.1983) (statute should ordinarily be interpreted according to its plain language, unless clear or contrary legislative intention is shown); ***Pearl River Valley Water Supply Dist. v. Hinds County***, 445 So.2d 1330 (Miss.1984) (words of statute or act should be ascribed their ordinary and usual meaning). Yet, a statute must be read sensibly, even if doing so means correcting the statute's literal language. ***Ryals v. Pigott***, 580 So.2d 1140 (Miss.1990), *cert. denied*, ***O'Quinn v. Ryals***, 502 U.S. 940, 112 S.Ct. 377, 116 L.Ed.2d 328 (1991); ***Aikerson v. State***, 274 So.2d 124 (Miss.1973) (holding that in construing statutes of doubtful meaning, the Supreme Court is required to consider consequences of a particular construction as to whether the result of such construction is good or bad). Whatever the legislature says in the text of the statute is considered the best evidence of the legislative intent. ***Isbrandtsen Co. v. Johnson***, 343 U.S. 779, 72 S.Ct. 1011, 96 L.Ed. 1294 (1952).

*Id.* at 657.

¶32. Although the statute says that a permissible reason for rejecting the absentee ballot of a voter is the failure of the signatures to correspond, this Court determines the true intent of the legislature was to disallow any ballot where the signatures were different. Bailey's argument is no more than an attempt to engage this Court in a battle of semantics. The Random House Webster's Dictionary defines correspond as "to be in agreement or conformity; to be similar." Random House Webster's Dictionary 147 (1st ed. 1993). For Bailey to argue for this Court to find that the election commissioners did not keep the statute's directives because they used the term "signature differences" rather than the exact statutory language of "signatures did not correspond" to reject the ballot, is simply a tenuous proposition at best. While the election commissioners may not have used the exact statutory language, they did comply with the legislative intent by using the term "signature differences" as a valid reason to reject the ballot.

¶33. The signatures did not correspond on the application for the ballot and the envelope containing the ballot itself. The statute does not state reasons that are acceptable for the signatures to not correspond. It only states that a ground for rejecting an absentee ballot is that the signatures did not correspond. *See* Miss. Code Ann. § 23-15-641.

¶34. This Court holds that the decision of the trial judge should be reversed and rendered. Therefore, Pegram is named Supervisor of Beat Five in Tunica County, as he was originally selected by the casting of lots by the DEC according to Miss. Code Ann. § 23-15-601.

## II. WHETHER THE TRIAL JUDGE ERRED BY FAILING TO GRANT PEGRAM A

**NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE.**

¶**35.** As Issue I is dispositive of the case, Issue II is moot and not discussed.

## CONCLUSION

¶36. This Court holds that the signature on the application for the absentee ballot and the signature on the envelope that contained the absentee ballot of Betty W. Hall are clearly different. The statute is clear that where the signatures do not correspond on the application and the envelope, the absentee ballot shall be rejected. There was no provision for excusable reasons for the failure of the signatures to correspond, and this ballot should not have been counted. Therefore, Pegram was the rightful winner of the election when his name was drawn by the DEC. This case is reversed and rendered in favor of Pegram.

¶37. Because the Court finds that Pegram is the rightful winner of the election as per the ruling on the first issue, the second issue is moot.

¶38. While the Court attributes no wrong doing to anyone in the handling of the absentee ballots (nor was that issue raised), the facts of this case illustrate the difficulties involved in the absentee ballot process, and the Legislature may wish to review and revisit the law in that area.

¶**39. REVERSED AND RENDERED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, SMITH AND MILLS, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**