# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2010-CA-01924-SCT

*PAMELA LYNN LAWSON*

*v.*

*HONEYWELL INTERNATIONAL, INC. f/k/a
ALLIED SIGNAL, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/16/2010 |
| TRIAL JUDGE: | HON. LESTER F. WILLIAMSON, JR. |
| COURT FROM WHICH APPEALED: | WAYNE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | EDWARD A. WILLIAMSON |
| | CHRISTOPHER M. POSEY |
| ATTORNEYS FOR APPELLEE: | JOSEPH W. GILL |
| | EDWARD J. CURRIE |
| | RANDAL R. CANGELOSI |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED IN PART; REVERSED IN PART AND REMANDED - 10/20/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., LAMAR AND PIERCE, JJ.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1.    Plaintiff Pamela Lynn Lawson appeals the trial court's grants of summary judgment

to the defendant, Honeywell International, Inc., on Lawson's Mississippi Products Liability

Act ("MPLA") claim and her negligence claim arising from injuries Lawson sustained when

her seatbelt buckle allegedly malfunctioned during an automobile accident.  We affirm the

trial court's grant of summary judgment as to Lawson's MPLA claim, as Honeywell is not

the "manufacturer" of the buckle for purposes of liability under the MPLA. However, we reverse the trial court's grant of summary judgment as to Lawson's negligence claim, and remand for trial, as the MPLA does not preclude common-law claims of negligence against a nonmanufacturing and nonselling designer of a product.

## FACTS AND PROCEDURAL HISTORY

¶2.    On July 31, 2005, Lawson lost control of her 1999 Jeep Cherokee while driving from Clara to Waynesboro, Mississippi. The vehicle veered off the highway and rolled over several times before coming to a stop. Lawson claims that, although she had her Gen-3 seat belt buckle correctly fastened at the time of the accident, a defective design in the buckle caused it to malfunction and disengage, resulting in her ejection from the vehicle. Lawson alleges she suffered severe injuries as a result. She filed this action against defendant Honeywell International, Inc., which she alleges originally designed the Gen-3 seat belt buckle before selling it to Chrysler in the mid-1990s.[1] Lawson brought claims of strict liability under the MPLA,[2] negligence, and negligence per se.

¶3.    Honeywell denied designing the buckle and denies that the design was defective.[3] Furthermore, Honeywell argued that the MPLA is the sole remedy for products liability

_____

[1]Lawson also named Key Safety Systems, Inc. and Chrysler, LLC, as defendants. Key Safety Systems currently manufactures and sells the Gen-3 buckle to Chrysler. However, Chrysler was severed from the lawsuit due to bankruptcy, and Key Safety settled with Lawson.

[2]Miss. Code Ann. § 11-1-63 (Rev. 2002).

[3] Honeywell alleges that its corporate predecessor, AlliedSignal, Inc., had a safety restraint division that manufactured the seat buckle for Chrysler, but it sold this division two years before merging with Honeywell, Inc., to form Honeywell International.

actions in Mississippi, and that the MPLA does not provide for a cause of action against a product designer that neither manufactured nor sold the product at issue. Thus, Honeywell claimed, even if it did originally design the Gen-3 buckle, it still could not be held liable for Lawson's injuries. The trial court agreed, holding that the MPLA is the exclusive remedy for products liability actions in Mississippi, and that the plain language of the MPLA does not allow design-defect claims against designers who neither manufacture nor sell the product.

¶4. Lawson filed a Motion for Reconsideration, which the trial court denied. Accordingly, the trial judge entered final judgment and dismissed Honeywell from the lawsuit with prejudice. Subsequently, Lawson timely filed this appeal.

## ISSUES

¶5. In her appeal, Lawson asserts the following issues, which we will consider:

I. Whether the trial court erred in holding that Honeywell was not a "manufacturer" for purposes of the MPLA, and in therefore granting Honeywell's motion for summary judgment as to Lawson's MPLA claim.

II. Whether the trial court erred in holding that the MPLA is the exclusive remedy for products liability actions in Mississippi, and in therefore granting Honeywell's motion for summary judgment as to Lawson's common-law negligence claim.

## STANDARD OF REVIEW

¶6. This Court reviews a trial court's grant or denial of summary judgment *de novo*. ***One South, Inc., v. Hollowell***, 963 So. 2d 1156, 1160 (Miss. 2007). Summary judgment shall be rendered when "the pleadings, depositions, answers to interrogatories and admissions on file . . . show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." Miss. R. Civ. P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists, whereas the nonmoving party is given the benefit of the doubt as to the existence of a material fact. *Monsanto Co. v. Hall*, 912 So. 2d 134, 136 (Miss. 2005). When considering a motion for summary judgment, evidence must be viewed in the light most favorable to the nonmoving party. *Price v. Purdue Pharma Co.*, 920 So. 2d 479, 483 (Miss. 2006).

## DISCUSSION

### I.    Whether Honeywell is a "manufacturer" under the MPLA.

¶7.    The function of the Court is not to decide what a statute should provide, but to determine what it does provide. *Russell v. State*, 94 So. 2d 916, 917 (Miss. 1957). The Court must not broaden or restrict a legislative act. *Barbour v. State ex rel. Hood*, 974 So. 2d 232, 240 (Miss. 2008) (quoting *Miss. Dep't of Transp. v. Allred*, 928 So. 2d 152, 156 (Miss. 2006)). The Court's goal is to give effect to the intent of the Legislature. *City of Natchez, Miss. v. Sullivan*, 612 So. 2d 1087, 1089 (Miss. 1992). To determine legislative intent, the Court first looks to the language of the statute. *Pinkton v. State*, 481 So. 2d 306, 309 (Miss. 1992). If the words of a statute are clear and unambiguous, the Court applies the plain meaning of the statute and refrains from using principles of statutory construction. *Clark v. State ex rel. Miss. State Med. Ass'n*, 381 So. 2d 1046, 1048 (Miss. 1980); *see also Gilmer v. State*, 955 So. 2d 829, 833 (Miss. 2007).[4]

---

[4]In some instances, this Court has stated that, if a statute's terms are unambiguous, the first rule of statutory construction is to apply a statute according to its plain meaning, known as the "plain meaning rule." *See, e.g.*, *Buckel v. Chaney*, 47 So. 3d 148, 158 (Miss. 2010); *State ex rel. Hood v. Madison County ex rel. Madison County Bd. of Supervisors*,

¶8. The MPLA provides the exclusive remedy for strict-liability claims against a manufacturer or seller for damages caused by a product that has a design defect rendering it unreasonably dangerous. Miss. Code Ann. § 11-1-63 (Rev. 2002). The MPLA states:

> [I]n any action for damages caused by a product except for commercial damage to the product itself:
>
>> (a) The manufacturer or seller of the product shall not be liable if the claimant does not prove by a preponderance of the evidence that at the time the product left the control of the manufacturer or seller:
>>
>>> (i) . . . The product was designed in a defective manner . . . and
>>>
>>> (ii) The defective condition rendered the product unreasonably dangerous to the user or consumer; and
>>>
>>> (iii) The defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought.

*Id.* Lawson argues that the plain meaning of "manufacturer" shows that the Legislature intended for the MPLA to be applicable to product designers. According to Lawson, the definition of "manufacture" includes designing; thus, designers are "co-manufacturers." However, a correct, plain-meaning analysis of the term "manufacturer" excludes a mere "designer" from falling under the statute.

---

873 So. 2d 85, 90 (Miss. 2004). However, in most instances this Court has stated that applying a statute according to its unambiguous terms is not a rule of statutory construction, but is done before resorting to statutory construction. *See, e.g., **Corp. Mgmt., Inc. v. Greene County***, 23 So. 3d 454, 465 (Miss. 2009); ***Kerr-McGee Chem. Corp. v. Buelow***, 670 So. 2d 12, 17 (Miss. 1995); ***Pinkton v. State***, 481 So. 2d 306, 309 (Miss. 1985). Regardless, whether "the plain meaning rule" is a rule of statutory construction, this Court always starts statutory interpretation by looking at the plain language of the statute.

¶9.    Mississippi law mandates that "[a]ll words and phrases contained in the statutes are used according to their common and ordinary acceptation and meaning . . . ." Miss. Code. Ann. § 1-3-65 (Rev. 2005); *see also* **Lambert v. Ogden**, 423 So. 2d 1319, 1321 (Miss. 1982) ("Where a popular word is used in a statute with no statutory definition, we follow the well established rule that popular words in a statute must be accepted in their popular sense . . . ."). Since the MPLA provides no specific definition for "manufacturer," its common or popular meaning must be applied. This Court frequently looks to dictionaries to ascertain the meaning of a word in its common or popular sense. *See, e.g.,* **Buffington v. Miss. State Tax Comm'n**, 43 So. 3d 450, 455 (Miss. 2010) (using *Black's Law Dictionary* and *Random House Webster's Unabridged Dictionary* to define "disposes of"); **Pregram v. Bailey**, 708 So. 2d 1307, 1314 (Miss. 1997) (looking to *Random House Webster's Dictionary* to find common meaning of "correspond"); **Kerr-McGee Chem. Corp. v. Buelow**, 670 So. 2d 12, 17-20 (Miss. 1995) (upholding use of *Webster's Third New International Dictionary* to conclude that the popular meaning of "raw material" did not include electricity); **Tower Loan of Miss., Inc. v. Miss. State Tax Comm'n**, 662 So. 2d 1077, 1083 (Miss. 1995) (using *Black's Law Dictionary* to define "book value") **Lambert v. Ogden** 423 So. 2d 1319, 1321-22 (Miss. 1982) (using *Webster's Third New International Dictionary* to define "truck").

¶10.    *Black's Law Dictionary* defines "manufacturer" as "a person or entity engaged in producing or assembling new products." *Black's Law Dictionary* 984 (8th ed. 2004). The *Random House Webster's Unabridged Dictionary* defines "manufacture"[5] as "the making

---

[5] The definition of "manufacture" must be used because *Random House Webster's Unabridged Dictionary* defines "manufacturer" merely as "a person, group, or company that

of goods or wares by manual labor or by machinery." *Random House Webster's Unabridged Dictionary* 1172 (2d ed. 1999). Conversely, "designer" is defined as "a person who devises or executes designs . . . for works of art or machines." *Random House Webster's Unabridged Dictionary* 539 (2d ed. 1999).[6] Based on these definitions, the common usage of the word "manufacturer" does not include "designer." Accordingly, the plain meaning of a product "manufacturer" does not include a mere "designer" of a product.

¶11. Furthermore, this Court has defined what constitutes a "manufacturer" for strict products liability purposes. In **Scordino v. Hopeman Bros., Inc.**, the Court found that the Restatement of Torts (Second) impliedly defined a manufacturer as "a person or company 'who regularly and *in the course of their principal business, create[s], assemble[s] and/or prepare[s] goods for sale to the consuming public.*" **Scordino v. Hopeman Bros., Inc.**, 662 So. 2d 640, 645 (Miss. 1995) (quoting **Olson v. Ulysses Irrigation Pipe Co., Inc.**, 649 F. Supp. 1511 (D. Kan. 1986)) (emphasis original).[7] The Court went on to hold that a manufacturer "produces goods as a principal part of its business *and* sells them either directly or for resale to the consuming public." **Scardino**, 662 So. 2d at 645 (emphasis original).

---

manufactures." **Id**. at 1172. Thus, the definition of "manufacture" controls the meaning of "manufacturer."

[6]*Black's Law Dictionary* does not define "designer."

[7]Although the Court addressed the definition of a "manufacturer" under common-law strict liability and, therefore, the Restatement (Second) of Torts, there is no indication in either the MPLA or the caselaw since its adoption that the Legislature intended to abandon this definition. *See* **Whelan v. Johnston**, 6 So. 2d 300, 303 (Miss. 1942) ("[W]ords which have a clear and definite meaning at common law should be given that meaning when used in a statute, unless it is clear from the statute itself that they were used in a different sense . . . .").

¶12. In so doing, the Court did not include mere designers in the definition of a "manufacturer" for purposes of strict liability. A designer of a good does not "produce" the good for direct sale or resale to the consuming public. *Black's Law Dictionary* defines "produce" as "to bring into existence" or "to create." *Black's Law Dictionary* 1245 (8th ed. 2004). The *Scardino* Court's definition implies that the manufacturer of a good is the person or company who brings the good into its tangible form – the point at which the good is ready for sale, or resale, to the consuming public. When a company merely creates the design of a product, but does not bring the product "into existence," it is not functioning as a "manufacturer," under this Court's definition.

¶13. A mere designer of a product does not fall under the definition of a "manufacturer," as that term is used in the MPLA. Accordingly, we affirm the trial court's grant of summary judgment to Honeywell with respect to Lawson's statutory claim of design defect.

## II. Whether the MPLA Precludes Common-Law Claims of Negligence Against a Nonmanufacturing Product Designer.

¶14. Honeywell argues that the MPLA abrogates all common-law claims of negligence for defective products, even those asserted against nonmanufacturers. To bolster this argument, Honeywell relies on the opening statement of the MPLA, which states: "[i]n any action for damages caused by a product . . . ." Miss. Code. Ann. § 11-1-63 (Rev. 2002). According to Honeywell, "any" means "every" and "all." However, a reading of the statute in its entirety reveals the error in Honeywell's argument.

¶15. In general, "a new statute will not be considered as reversing long-established principles of law and equity unless the legislative intention to do so clearly appears." *Thorp*

***Commercial Corp. v. Miss. Road Supply Co.***, 348 So. 2d 1016, 1018 (Miss. 1977). This Court follows the long-standing maxim of statutory construction that "the Legislature's intention must be determined by the total language of the statute and not from a segment considered apart from the remainder . . . ." ***Manufab, Inc. v. Miss. State Tax Comm'n***, 808 So. 2d 947, 949 (Miss. 2002) (quoting ***Brady v. John Hancock Mut. Life Ins. Co.***, 342 So. 2d 295, 298 (Miss. 1977)); *see also* ***L.W. v. McComb Separate Mun. School Dist.***, 754 So. 2d 1136, 1140 (Miss. 1990) ("[T]he legislative intent must be determined from the total language of the act and not from one section considered apart from the remainder."). The Court looks to the whole of a statute to avoid adhering to one sentence or phrase of statute in a way that skews its true meaning. *See* ***Manufab, Inc.***, 808 So. 2d at 949.

¶16. Interpreting the MPLA as a whole reveals that claims against nonmanufacturing and nonselling designers are outside the scope of the statute. The MPLA addresses what plaintiffs must prove to hold "manufacturers" and "sellers" liable for damages caused by a product. Miss. Code Ann. § 11-1-63 (Rev. 2002). Because the statute applies only to manufacturers and sellers, a person or entity other than the manufacturer or seller – who negligently designs a product – may be held liable for common-law negligence or under any other available theory of liability. As discussed above, the "common and ordinary acceptation and meaning" of "manufacturer" does not include mere designers of a product. Read plainly, the MPLA does not address what a plaintiff must prove in an action against a product designer.

¶17. This Court "cannot . . . add to the plain meaning of the statute or presume that the legislature failed to state something other than what was plainly stated." ***His Way Homes,***

9

*Inc. v. Miss. Gaming Comm'n*, 733 So. 2d 764, 769 (Miss. 1999). The Legislature did not state that the MPLA applies to, or precludes, claims against designers of a product. Holding that the MPLA is applicable to such claims would constitute an improper addition to the statute, since designers plainly are omitted.

¶18. In its brief, Honeywell cites *Jowers v. BOC Group, Inc.*, a federal district-court case which held that the MPLA abrogated common-law negligence claims of product defect. *Jowers v. BOC Group, Inc.*, 2009 WL 995613, at *4 (S.D. Miss. April 14, 2009) *aff'd in part, vacated in part on other grounds, and remanded sub nom.*, *Jowers v. Lincoln Elec. Co.*, 617 F.3d 346 (5th Cir. 2010). The court in *Jowers* held that the MPLA precluded common-law negligence claims *against a manufacturer*. *Id.* at *4. Neither *Jowers* nor any other Mississippi case cited by Honeywell stands for the proposition that a negligence claim against a defendant who is not a "manufacturer" or "seller" is precluded by the MPLA.

¶19. We hold that the MPLA does not preclude common-law negligence claims against nonmanufacturing designers who do not fall under the purview of the statute. Accordingly, we reverse the trial court's grant of summary judgment to Honeywell with respect to Lawson's common-law negligence claim.

## CONCLUSION

¶20. The plain meaning of the MPLA and this Court's previous definition of "manufacturer" for strict-liability purposes mandate a finding that a mere designer is not a manufacturer subject to liability under the MPLA. Accordingly, we affirm the trial court's grant of summary judgment to Honeywell as to Lawson's statutory claim.

10

¶21.   However, the MPLA does not preclude claims against defendants who are neither manufacturers nor sellers, as those terms are understood in the statute.  Accordingly, we reverse the trial court's grant of summary judgment to Honeywell as to Lawson's common-law negligence claim, and remand for further proceedings consistent with this opinion.

¶22.   **AFFIRMED IN PART; REVERSED IN PART AND REMANDED.**

**CARLSON AND DICKINSON, P.JJ., RANDOLPH, LAMAR, KITCHENS, CHANDLER, PIERCE AND KING, JJ., CONCUR.**